BARRINGTON ANTHONY, MARSHAL OF THE UNITED STATES, PLAIN-
TIFF IN ERROR, vs. CYRUS BUTLER, DEFENDANT IN ERROR.

A mortgage was executed by D. G. as the agent of the Union Steam Mill Company, con-
veying to the mortgagee certain lands in Rhode Island, with a woollen mill and other
buildings, with the machinery in the mill. D. G. was, and had been the general agent
of the company, and as such, had made all purchases and sales for the company, and the
mortgage was executed by him, with the consent and authority of the persons who at
the time of its execution were members of the company. The machinery, and other
movables, had been taken in execution by the marshal of Rhode Island, under an ex-
ecution issued on a judgment obtained after the mortgage against the company. The
Court held, that although the mortgage was not valid as the deed of the corporation, it
was sufficient to convey a title to the mortgagee in the machinery; and that he could
maintain an action of replevin for them against the marshal.
The mortgage was recorded by the town clerk of the place, where the property was, he
being the proper officer to record such instruments, under the statute of Rhode Island.
He kept two books, in one of which he recorded mortgages, which included real es-
tate; and in the other, mortgages upon personal property only. The mortgage in this
case, was first recorded in the book kept for recording mortgages on real estate. And he
gave a certificate, "lodged in the town clerk's office to record, November 20, 1837, at 5
P. M., and recorded same day, in the record of mortgages in East Greenwich, book
No. 4," &c. The Court held that this certificate was properly received in evidence, in
the Circuit Court.
It is a well settled rule, though a very technical one, that one partner cannot bind his co-
partners by deed. And it is equally well settled that one partner may dispose of the
personal property of the firm. One partner may bind his copartner by deed, if he is
present, and assent to it. The seal of one partner, with the assent of the copartner,
will bind the firm.
Where a statute requires that mortgages on personal property shall be recorded in a book
to be specially kept for the purpose, and says nothing as to the book in which mortgages
on real and personal property shall be recorded, and in the conveyance the personal
and real property, is so blended as to be inseparable; to require a double record would
seem to be an unreasonable construction of the statute. The record of the mortgage in
the book kept for recording mortgages on real estate, is within a fair construction of the
Rhode Island statute.

ERROR to the Circuit Court of the United States, for the district
of Rhode Island.

The defendant in error, Cyrus Butler, in 1838, instituted an action
of replevin against Barrington Anthony, the marshal of the United
States, for the district of Rhode Island, to recover from him certain
machinery, and articles used in the manufacture of goods, which
had been the property of the Union Steam Mill Company, and
which were claimed by the plaintiff, under a mortgage alleged to
have been executed to him by the Union Steam Mill Company, on
the 20th of November, 1837, to secure to him the payment of six-
teen thousand four hundred and fifty-nine dollars, loaned to the
company, by Cyrus Butler.

The defendant in the Circuit Court, the marshal of the district of
Rhode Island, ordered the taking of the goods under an execution
issued out of the Circuit Court of the United States for that district,
on a judgment against Daniel Greene, William P. Salisbury, and
Rufus W. Dickinson; which execution had been so levied upon

the goods as of said Greene, Salisbury, and Dickinson, for the purpose of satisfying the debt and costs.

The cause was tried, before a jury, in November, 1838, and a verdict, and judgment were rendered for the plaintiff. The defendant prosecuted this writ of error.

The matters of law arising in the case were presented on a bill of exceptions, taken by the counsel for the defendant on the trial.

The bill of exceptions stated that the plaintiff in support of his title to the articles named in the replevin, produced a certain deed dated 20th November, 1837, executed by one Daniel Greene, as agent for the Union Steam Mill Company, the said company being a corporation, conveying the property of the company, the articles mentioned in the replevin included, to the plaintiff on mortgage; and proved the execution of the deed, and produced the act of the legislature of Rhode Island, incorporating the company, and produced the record of the corporate proceedings of the company, having duly proved the said proceedings. The execution of the deed of 20th November, 1837, was in the following form. "Union Steam Mill Company, Daniel Greene, [L. s.]" The plaintiff also produced and read in evidence, a deed dated 18th May, 1837, from William P. Salisbury to Daniel Greene, by which all the property of said Salisbury, in the Union Steam Mill Company, was conveyed to Daniel Greene. The plaintiff also proved that Daniel Greene was, and had been agent, from the time of the formation of the company; and that the deed to the plaintiff was executed by him, by, and with the consent and authority of the company.

The plaintiff insisted that the deed of Daniel Greene was the corporate deed of the Union Steam Mill Company, and conveyed to him the articles mentioned in the replevin; and he further insisted, that if it was not their corporate deed, it was sufficient to convey a valid title to the property to him, inasmuch as the said deed was made and executed by, and with the consent of those, who at the time were members of the company; and that Daniel Greene, as the general agent of the company, was authorized to convey the articles named in the plaintiff's writ.

The defendant objected to the deed as inoperative, the Union Steam Mill Company having had no corporate existence at the time it was executed; and the Court decided that the corporate existence was not so proved as to allow the deed to be given in evidence, as the deed of the corporation; but if inoperative, as the corporate deed, it was sufficient and competent to convey the articles in the replevin to the plaintiff. To this opinion the defendant excepted.

The defendant also objected to the deed, as it did not appear to have been recorded according to the law of Rhode Island regulating the recording of mortgages on personal property, prior to the defendant's levy on the goods.

On the back of the deed was the endorsement of the town clerk of the place where the property was situated, stating that the deed had been "lodged in the town clerk's office, to record, November

[Anthony *vs.* Butler.]

20, 1837, at 5 o'clock, P. M., and recorded same day in the record of mortgages in East Greenwich, book No. 4, pages 49 0, and 51." The town clerk is the proper recording officer, by the laws of Rhode Island

The defendant's counsel objected to the sufficiency of the certificate as evidence that the deed was duly recorded, and produced evidence that there was a book kept by the town clerk, in which mortgages of personal property only, were recorded; and other mortgages, which included real estate, were recorded in other books kept in the office; and after recording the deed in the book of mortgages of real estate on the 20th November, 1837, the deed was taken by him to the office of the town clerk, on the 14th November, 1838, and was recorded in the book kept for mortgages on personal property. The Court decided that the certificate was sufficient evidence that the said deed was duly recorded. The defendant excepted.

The case was submitted to the Court on printed arguments, by Messrs. Pearce and Turner, and Mr. Atwell, for the plaintiff in error; and by Mr. Ames, Mr. Tillinghast, and Mr. Green, for the defendant.

For the plaintiff in error it was argued.—The counsel for the plaintiff in error say the deed in question is either the deed of the party executing it, or it is no deed. Two of the necessary incidents to a deed, says Lord Coke, (2 Thomas' Coke Lit. 272,) are a person able to contract, and by a sufficient name. In the deed offered in evidence by the defendant in error, in the Circuit Court, the grantor is a corporator, described as such, and using the name and style of the corporation.

Individuality is an attribute of corporations as well as of natural persons. Dartmouth College *vs.* Woodward, 4 Wheat. 636. 1 Kyd on Corp. 15. 4 Serg. and Rawle, 356. The distinction between those bodies and natural persons, is distinctly marked. 1. Corporations are limited in their powers by the terms of their creation. Beatey *vs.* The Lessee of Knowles, 4 Peters, 152. 2. By the personal irresponsibility of their members. The United States Bank *vs.* The Planter's Bank, 9 Wheat. 907. 2 Serg. and Rawle, 311. 9 Mass. Rep. 355. 15 Mass. Rep. 505. 16 Mass. Rep. 9.

The interest of corporators in the capital stock of a corporation is different from that of ordinary co-partners. Wood et. al. *vs.* Dummer et. al. 3 Mass. Rep. 38.

The deed was made as the conveyance of the corporation, and was so received by the grantee. If there was no such corporation in existence, the persons voting and acting as corporators had no legal powers, and there was no one competent to act as a grantor in the deed.

The deed is made, and intended as made, not by persons acting in their natural capacities, and as distinct individuals, under the ge-

neral laws of the land; but by persons acting under the artificial characters of corporators, with the limited and restricted rights and powers conferred upon them by their charter of incorporation. If then the party by whom the deed is supposed, from its language and evident intent, to have been made and executed, had no legal existence—was not in esse; by what rule of law is it that the deed can be held to enure to the grantee as a deed of another person, possessing a distinct individuality, and different legal attributes?

The maxim "quando quod ago, non valet ut ago, valeat quantum valere potest," under which Courts give to deeds a legal effect, different from the technical effect of the words of the instrument itself, does not apply to this case; because that rule is only applied to the character of the estate intended to be granted, in order to effectuate the intention of the parties, and not to the character of the parties themselves. 4 Cruise Dig. 298—303, and cases there cited.

The deed cannot be the deed of the copartnership, and thus enure to the benefit of the grantee; because it is under seal, and is executed by one partner only in the name of the whole, and without a special authority for the purpose under the seal of the corporation. Harris *vs.* Jackson, 7 Term. Rep. 207. 4 Term Rep. 313. Their subsequent assent to it was as corporators, and not as copartners. At the trial, it did not appear that the deed had been recorded prior to the levy on the property, according to the act of the general assembly of Rhode Island, passed February 1, 1834.

This statute is remedial in its character, and was intended by the legislature to remedy the mischief occasioned by the rule of law as expounded by the Courts, that possession by the vendor of personal property, (if such possession was consistent with the deed,) was not evidence of fraud. The construction of such a statute should be liberal, to prevent the mischief; or, as said by Lord Coke, the judges shall put such a construction on a statute as may redress the mischief, guard against subtle inventions and evasions for the continuance of the mischief, pro privato commodo, and give life and strength to the remedy, pro bono publico, according to the true intent and meaning of the law. Heyden's case, 3 Rep. 7. Pierce *vs.* Hoppin, 1 Strange, 253. The full result contemplated by this statute cannot be reached, without the record is made in the manner pointed out in the act. The manner of record is, therefore, an essential part of the law. See State Laws, 835.

The certificate of the town clerk was not in itself sufficient evidence that the mortgage in question had been recorded, in conformity with the provisions of law; because the expression " book of mortgages," used in said certificate, was ambiguous in its character, and might refer to mortgages of real estate, as well as to personal property. This ambiguity being explained by evidence, it is apparent that the actual record was not made in conformity with the form prescribed by the statute, to wit, in a book to be kept by the town clerk, for the especial purpose of recording therein mortgages of personal

property. This form is imperative. 2 Inst. 388. 1 East, 64. It is of the essence of the statute, and therefore imperative. 1 Burr. 447. And it is not directory only, for it makes void the mortgage, when not recorded. Rex vs. Bunningham, 8 Barn. and Cres. 29.

Although it is the duty of the clerk to record the mortgage, yet the party claiming under it is affected by the misfeasance or nonfeasance of that officer in the performance of his duty. Johnson vs. Stagg, 2 Johns. R. 510. Beekman vs. Frost, 18 do. 544. Frost vs. Beekman, same case, 1 Johns. C. R. 288. The New York statute is in its terms like the Rhode Island statute. 18 Johns. R. 553.

The subsequent record of the mortgage in the proper book, under date of the 14th Nov. 1838, was made after the levy by the marshal, and was consequently void as to that levy.

That record cannot relate back to the time when the deed was lodged to be recorded, (Nov. 20, A. D. 1837,) for the statutes of Rhode Island make a manifest distinction between mortgages of real and personal property; making the first valid as to subsequent purchasers when recorded or lodged to be recorded, and the second valid when recorded only. Laws of Rhode Island, 202 and 835. And it is the further policy of the state of Rhode Island, that no deed, when once left to be recorded, shall be taken from the office of the clerk until the same shall have been by him duly recorded. Laws of R. I. 878.

For the defendant in error, it was contended, by Messrs. Ames, Tillinghast, and Green, that the deed of Daniel Greene, of 20th November, 1837, executed by Greene as the agent, and in behalf of the company, was fully competent to convey the articles in contest between the parties to this suit. The Circuit Court decided that as the legal existence of the corporation was not shown, it was not proved to be the deed of the corporation; but as the property conveyed was that of the individuals represented by Mr. Greene, and the deed was made with the individual approbation of the owners, it was sufficient. This decision was correct. The individuals composing the corporation were in partnership, transacting business as partners, when the charter was granted. By the charter, the property vested in the corporation; and each of the corporators are made individually liable for the corporate debts. Mr. Greene was the agent before and after the charter was granted.

If the Union Steam Mill Company were not a corporation, they were a copartnership. If the property in question did not belong to them as a corporation, it belonged to them as a copartnership. This copartnership acted by an agent, and always had so acted. The deed in question was executed by this agent, with the assent of all the copartners.

The deed in form purports to be executed by the corporation; but if in law there was no corporation, and the property in question was held by the corporators as copartners, still the deed is competent, as their individual act, to convey the property.

It is not material whether the company held the property as a copartnership, or as a corporation. If the deed was executed by the agent of the company, with the assent of all the stockholders or copartners, they are bound by it. If they, or an attaching creditor, could be allowed to set up their title as copartners against the present deed, the charter would become an instrument of the grossest fraud. They hold themselves out to the defendant in error as a corporation, and as such, owning the property in question, and having legal authority to convey the same to him by deed of mortgage. Upon the faith of these representations, the defendant in error parts with his money, and takes his mortgage. He is then told that the parties who made the mortgage in the character of corporators, were copartners; and that, as they owned the property as partners and not as a corporation, he takes nothing by his deed.

It is not necessary to pass personal property that the conveyance shall be by deed. It may pass by an ordinary bill of sale, or bill of parcels. In this case, the transfer of the goods by sale was made by Daniel Greene, and this mortgage was assented to expressly by every member of the company. Cited, Strod *vs.* Wyse, 7 Conn. R. 214. Coe *vs.* Talcott, 5 Day's Rep. 88.

There is a large class of cases, in which deeds not being competent to effectuate the intent of the parties in the form in which they have been drawn, have been construed to operate in another way in order to effectuate that intent. Thus it has been decided that a deed which was intended to operate as a lease and release, or bargain and sale, but could not take effect in that manner; should operate as a covenant to stand seized. 4 Cruise Dig. p. 299, sec. 31. A deed intended to operate as a bargain and sale, but which was void for want of a pecuniary consideration, has been held to operate as a confirmation. Ibid. sec. 32. See also Roe *vs.* Tranmer et al. 2 Wilson Rep. 15. Wallis *vs.* Wallis, 4 Mass. Rep. 135. Marshall *vs.* Fish, 6 Mass. Rep. 24. Cox et al. *vs.* Edwards, 14 Mass. Rep. 491. 1 Hen. Black, 313. Vere *vs.* Lewis, 3 Term Rep. 182. Gibson *vs.* Hunter, 2 Hen. Black. 187.

It is said by the plaintiff in error, that if the Union Steam Mill Company had no corporate existence, there was no grantor to the deed. This would be allowing a party to take advantage of his own fraud. A corporate deed is the form in which the owners of the property chose to convey it, and they are bound by such a deed in the same manner that they would have been had they chosen to convey it under assumed names. If a man executes a bond or any other instrument under an assumed name, he is bound by it in the same manner as if he had executed it in his true name.

The next question is, was the deed sufficiently recorded?

The plaintiff in error objects that this mortgage deed should have been recorded in a book for the record of mortgages of personal property only. This question depends on the true construction of the act of the assembly of Rhode Island, passed January, 1834.

The defendant in error contends that this statute does not apply

to a mortgage, comprehending real and personal estate; the personal being incident to and connected with the real, both the real and personal forming an entire estate. By such a deed the personal would pass as incident to the real, without being mentioned. If A. conveys his cotton mill to B., the machinery in the mill will pass as much as the mill itself, or the land on which it stands, or the dams and flumes which belong to the mill, if it be a water mill. See Whitney *vs.* Olney et al. 3 Mason Rep. 280. Gennings *vs.* Lake, Croke Car. 168. Boocher *vs.* Samford, Croke Eliz. 113. Yates *vs.* Clincard, Croke Eliz. 704. Doe *vs.* Collins, 2 Term Rep. 498.

The mortgage to the defendant in error was "of all the machinery in the said factory." The construction of the law relative to recording mortgages, which is claimed by the plaintiff in error, would make this deed essentially different from what was intended by the parties to it. It was a mortgage of real estate, carrying with it, as appurtenant to the real estate, the machinery in the mill. The mortgagor has, by the law of Rhode Island, three years after the mortgage is foreclosed to redeem. The defendant in error could not have taken the personal property out of the mill and sold it.

Under the mortgage the defendant could take no possession of the property, but as an incident to the mill. This possession of the property was only as such an incident; and if an ejectment were brought, the machinery would be recovered as an incident to the mill.

If, then, the estate conveyed by the mortgage, personal as well as real, is redeemable as real estate; if the general rights and obligations of the parties to this mortgage, be the rights and obligations of the parties to a mortgage of real estate, the defendant in error contends that it is not to be recorded as a mortgage of personal property, under the act of January, 1834.

The object of the act was to give notice of the existence of the incumbrance. That object is answered by a record in one book, as well as by a record in two. To require a double record to be made in the same office, would be requiring the performance of an idle ceremony; which would be no benefit to those who are entitled to notice, and failure to perform which would subject an innocent mortgagee to the loss of his property.

The defendants in error contend that the provisions of the recording act are only directory to the town clerks—and the law is complied with by the recording of the deed in the town clerk's office. If recorded in the office of the town clerk, it is all-sufficient.

The town clerk is the keeper of the records, and he of course knows where to find the record of any instrument. He alone has a right to search them, at the expense of a party inquiring. It is for him to make such arrangements for the recording of papers, as will give him the best means of making an accurate search. Cited as to the construction of statutes, in the manner contended for by the counsel for the defendant in error, Rex *vs.* Loxdale, 1 Burr. 447. Rex *vs.* Sparrow, 2 Strange, 1123. Rex *vs.* The Inhabitants

of Bunningham, 8 Barn. and Cres. 29. Beverley vs. Ellis, 102. Brackenridge vs. Todd, 3 Monroe Rep. 54. The defendant in error also contended, that according to the true construction of the act, the mortgage was properly recorded in the record of mortgages of personal property. The book of mortgages of real estate is wholly unknown to the registry laws of Rhode Island. The law does not contemplate mortgages of real estate to be recorded in one book, and absolute deeds in another. It makes no distinction between them; nor between mortgages, and any other conveyance of real estate.

The defendant in error further contends, that the certificate of the town clerk is conclusive evidence of the facts therein stated. He alone is the recording officer. He alone is entitled to the custody of the records; and he alone is the certifying officer. See Laws of Rhode Island, 878. He certifies the day and the hour when the mortgage was left for record. His certificate of this fact, and of the fact that the record has been made, cannot be contradicted. Cited, Tracy vs. Jenckes, 15 Pickering's Rep. 465. Frost vs. Beekman, 1 Johns. Chan. Rep. 288.

The counsel for the plaintiff in error, in reply, denied that a deed or any other conveyance, purporting to be executed by a corporation, and using such terms as are proper to convey property, could be taken as the joint deed of these individual corporators. Nor could such a deed be made to operate as a joint deed of the individuals, on the ground that the corporators had committed a fraud by holding themselves out as capable of making such a deed.

Nor could the deed operate as an estoppel.

An estoppel does not bind a stranger. Co. Lit. 352a. An estoppel does not bind mere strangers, or those who claim by title paramount the deed. It does not bind persons claiming by an adverse title, &c. Carver vs. Astor, 4 Peters, 83.

Simply recording a mortgage in the town clerk's office in any book, would not in the judgment of the general assembly have accomplished this object; because, in practice, the records in the town clerk's office are open at all convenient hours to public inspection; are searched, as matter of right, by every freeman and freeholder; and the town clerk himself is not exclusively entitled to their perusal, although when called upon to search the same, he is by law entitled to certain fees. We believe this practice to be common to every state in the Union. The legislature were well aware of its existence in Rhode Island; and in passing the act in question, they manifestly intended that the record of mortgages of personal property should be so made that every person interested might know with certainty where to look for it. If it were not so, where was the necessity of prescribing the mode and place of record? If the town clerk had the exclusive right to search the records, and the community were dependent on him solely for information as to their contents, why the necessity of directing him as to the place where to make the record?

[Anthony *vs.* Butler.]

In conclusion, the statute of February, 1834, is a remedial statute; the whole must be construed together in order to effectuate the remedy provided, and prevent the mischief contemplated by the statute: and the deed in question was not recorded prior to the levy by the plaintiff on error on the articles named in the writ of replevin of the defendant in error, in conformity with the provisions of said statute.

Mr. Justice M'LEAN delivered the opinion of the Court.

This case is brought before this Court by a writ of error to the Circuit Court of Rhode Island.

The defendant, Cyrus Butler, commenced an action of replevin against the plaintiff in error, for various articles of personal property specified in the writ of replevin, and claimed by him under a mortgage dated the 20th day of November, 1837. The defendant had taken possession of the property, by virtue of an execution directed to him as marshal, on a judgment against the mortgagors.

On the trial, certain exceptions were taken to the rulings of the Court, which bring the questions decided before this Court.

The mortgage was executed by one Daniel Greene, as the agent of the Union Steam Mill Company, said company being a manufacturing corporation, conveying to the plaintiff below certain lands, with a woollen mill and other buildings, with the machinery in said mill, &c. And the incorporating act and several acts amendatory thereto were read in evidence. And also a deed from William P. Salisbury to the said Greene, dated the 18th May, 1837, conveying all his interest in the real and personal property of the Union Steam Mill Compan---

And it was proved that Daniel Greene, who executed the deed first aforesaid, was, and had been from the time of the formation of said company, the general agent, and, as such, had made all purchases and sales for the company; and that the deed was executed by him with the consent and authority of said company: and also by and with the consent and authority of the persons who, at the time of the execution thereof, were members of said company.

The Court decided that the said corporation was not so proved as to entitle the deed to be read to the jury as the deed of the said corporation; but that the deed was good to convey a valid title to the articles named in the writ of replevin. To this decision the counsel for the defendant excepted.

And it was further objected to said deed, that it did not appear that the same had been recorded prior to the defendant's levy on the articles by the writ of replevin, in conformity to the statute on the subject. The counsel for the plaintiff produced and read to the Court an endorsement on the back of said deed, signed by the clerk of the town of East Greenwich, in the words and figures following, to wit: "Lodged in the town clerk's office, to record, Nov. 20th, 1837, at 5 o'clock P. M., and recorded same day in the records of mortgages in East Greenwich, book No. 4, &c."

It was proved that the said clerk kept a book in which all mortgages of personal property only were recorded; and all other mortgages, which included real estate, were recorded in other books kept in the office. After the deed was recorded, it was taken away by the plaintiff below; and afterwards, on the 14th November, 1838, was returned by him to said office, when it was recorded in the book kept for mortgages of personal property. And the Court decided that said certificate was sufficient evidence that the deed was duly recorded. To which decision the defendant excepted.

The above exceptions present two points for examination.

1. Whether the mortgage deed was valid.

2. Whether it was duly recorded.

To the decision of the Court, that the evidence did not show that the stockholders had organized themselves under the act of incorporation, so as to enable them to execute a corporate deed, there was no exception. This ruling of the Circuit Court is not, therefore, brought before this Court.

The deed of mortgage purports to be executed by the corporation. The Union Steam Mill Company is the name of the corporation; and on the face of the deed, the company is stated to have been legally incorporated. Daniel Greene, as the agent of the company, and in its name, signed the deed, and affixed to it the seal of the corporation.

And the counsel for the plaintiff in error insist, that this mortgage can only be operative as the deed of the corporation. That if it be not the deed of the corporation, it is no deed. And that in no sense can it be considered the deed of the stockholders of the Union Steam Mill Company, as partners; independent of the act of incorporation.

This, it is said, would be giving a different effect to the deed from that which was intended by the parties who executed it. They bind themselves as corporators, and convey, as such, the property of the corporation; and to hold that the deed binds them in any other capacity, or conveys the property in any other, would not only essentially vary the terms of the deed, as clearly expressed upon its face, but it would be a fraud against the creditors of the company. And it is also insisted, that the deed, being under seal, and executed by only one of the partners, cannot bind the company.

From the record it appears that this company did business before the act of incorporation was passed, and that Daniel Greene acted as its agent. And that after the deed of William P. Salisbury, conveying to the company all his interest in the property, in May, 1837, Daniel Greene and R. W. Dickinson composed the stockholders of the company. And it appears, after they assumed their corporate functions, much formality was observed in the record of their proceedings.

Greene acted as chairman and Dickinson as secretary: motions were made, and, as it would seem, were unanimously decided. A special meeting of the stockholders was called, on the subject of executing

the mortgage, by a formal note, addressed by R. W. Dickinson, as clerk, to Daniel Greene, and another to himself.

In their business proceedings, generally, as well as in the execution of the mortgage, these individuals assumed to act as a corporation. But they were not authorized to act in this capacity. This fact must be taken as granted, at least so far as the decision of the present case.

And here a question arises, whether the acts of these individuals, in their assumed character as corporators, are void. May they hold themselves out to the world as entitled to certain corporate privileges, when they were not so entitled; and afterwards avoid their contract on this ground? This would be a somewhat new, and certainly a most successful mode of practising fraud. It would be enabling a party to take advantage of his own wrong.

As the present controversy involves only the right to the personal property named in the deed of mortgage, it is not necessary to consider the validity of that instrument beyond the effect it has on this property.

It is a well settled rule, though a very technical one, that one partner cannot bind his copartner by deed. And it is equally well settled, that one partner may dispose of the personal property of the firm.

In this case, had an absolute sale and delivery of this property been made by Greene, no one, in the absence of fraud, could have questioned the title of the purchaser. But the mortgage was executed under seal, and Greene, it is alleged, could not bind his partner by deed.

That these individuals, not being responsible on their contracts as a corporation, or liable as copartners, is too clear to admit of doubt. The property of the company, both real and personal, was vested in them; and they controlled its entire operations.

The mortgage deed was executed on the 20th of November, 1837. And it appears from the record, that Greene and Dickinson, unanimously resolved, that the mortgage should be executed by Greene as agent of the corporation. And it was accordingly executed on that day.

Now that one partner may bind his copartner by deed, if he be present and assent to it, is a well established principle.

The signature and seal of Greene are affixed to the mortgage; and that this was done with the assent of his copartner, Dickinson, is unquestionable. But was Dickinson present at the execution of the mortgage, and did he then assent to it? We think the facts in the record will warrant such a conclusion. The resolve of the partners to give the mortgage, and the execution of it, bear the same date; and may well be considered the same transaction. This seems to be the fair result of the facts stated, and must be received as prima facie evidence of the due execution of the deed.

These facts are liable to be rebutted by any one who questions the validity of the deed.

All those parts of the deed, which refer to the corporation, including the corporate seal, may be rejected as surplusage, which do not vitiate it. They are considered as merely descriptive, and being false in fact, can have no effect on the deed.

The seal of one partner to a deed, with the assent of the copartner, will bind the firm.

From these considerations we think the Circuit Court did not err, in receiving the mortgage deed in evidence; treating it as a valid instrument, as it respects the rights involved in this suit.

2. Was this mortgage duly recorded? By an act of the legislature of Rhode Island, passed at the January session, 1834, entitled "an act to prevent fraud in the transfer of personal property," it is provided, that no mortgage of personal property, except as between the parties, shall be valid; unless possession accompany the deed, or it be recorded in the office of the town clerk. In the second section it is made the duty of the clerk to record such mortgages in a book kept for that purpose.

It appears from the evidence, that the town clerk kept a book in his office in which he recorded all mortgages of personal property; and all other mortgages which included real estate, or real estate and personal, were recorded in other books kept in said office, in one of which this mortgage was recorded. And the question is, whether such a registration is sufficient under the statute.

The object of the recording act is to give notice to subsequent purchasers. The statute undoubtedly requires the clerk to record mortgages for personal property only, in a book kept for that purpose. This being the requirement of the law, to which the clerk strictly conformed, there could be no uncertainty in searching the record for a personal mortgage.

But it seems that the statute did not expressly provide, in what book a mortgage like the one under consideration, for both real and personal property, should be recorded. And it appears that it was the usage of the office, to record such mortgages in the book which contains mortgages for real estate.

Now if this be insufficient, nothing short of recording such a deed in both books, could be held a compliance with the statute.

And can this be necessary? The conveyance of the personal and real property is so blended in the mortgage, as to be inseparable. To require a double record would seem to be an unreasonable construction of the statute, as it cannot be necessary to effectuate its object. Both records are kept in the same office, and by the same person; who performs the duties of the office, and must always be well acquainted with its usage. Any inquiry of the clerk for the record of a mortgage like the one under consideration, would as certainly lead to it, under the usage, as if it were recorded in both books.

If this mortgage had been recorded in the book for personal mortgages, the same strictness as now contended for might be urged

against such record book, as it would not then be kept exclusively, for personal mortgages.

We think that this mortgage has been recorded in a book kept, though not exclusively, for the purpose of recording mortgages which convey real and personal property; and that it is within a fair construction of the statute.

We think also, that the Circuit Court did not err, in deciding that the certificate of the clerk was sufficient evidence that the mortgage deed was duly recorded. The judgment of the Circuit Court, not being erroneous, is affirmed with costs.