THE VAN EEPOEL REAL ESTATE COMPANY, a Corporation, *Appellant*, v. THE SARASOTA MILK COMPANY, a Corporation, TAS TEE ICE CREAM COMPANY, a Corporation, and ARMSTRONG CORK & INSULATION COMPANY, a Corporation, *Appellees.*

Division A.

Opinion filed September 3, 1930.

ELLIS, J. (on rehearing, dissenting):

The question presented is one of priority of liens. The facts are as follows:

On November 25, 1925, the Tampa Stock Farms Dairy Company, a corporation, owned the west fifty feet of Lots 2, 4, 6 and 8 of Block 23 in the City of Sarasota. The corporation had completed a building on the west fifty feet of Lot 2 and installed machinery for the purpose of operating a "milk plant" on the property. It engaged in the business of pasteurizing, bottling and distributing milk in Sarasota. It was enagaged in the same business in Tampa. In Sarasota the business was conducted in the name of Sarasota Milk Company.

The corporation, that is to say the Tampa Stock Farms Dairy Company, had been operating the Sarasota "plant" about a month when it entered into negotiations with W. B. Kuhns to sell the property. These negotiations resulted in a sale of the property on the above stated date. Kuhns intending to operate a milk business in the name of The Sarasota Milk Company. It is not clear when the corporation was organized nor when it became authorized to transact business as a corporation. On that date, however, it had not acquired a seal. Part of the purchase price of the lot was paid and the remainder, $21,000, was evidenced by two promissory notes in the sum of $10,500 each, one

payable on or before one year after date and the other on or before two years after date. These notes were secured by a mortgage on the property. No copies of the notes are attached to the bill but they appear in the evidence. They were signed as follows: "The Sarasota Milk Co. By W. B. Kuhns Treas." The mortgage was signed on the same day as follows: "The Sarasota Milk Company By W. B. Kuhns, Pres." The corporate seal of the mortgagor company was not attached to the mortgage when it was executed nor does it appear that it adopted a seal for the purpose, but the mortgage was left in the hands of attorneys for the Tampa Stock Farms Dairy Company, mortgagee, to be completed by having the Sarasota Milk Company attach its seal so soon as it should be obtained and then immediately to be recorded. The mortgage was recorded on April 21, 1926.

The Tampa Stock Farms Dairy Company and The Van Eepoel Real Estate Company are corporations but they are officered by the same individuals and have practically the same stockholders. Mr. August Van Eepoel is secretary and treasurer and "actively in charge of both corporations. In order to separate the real estate business from the dairy business the Tampa Stock Farms Dairy Company transferred to the Van Eepoel Real Estate Company all the former's real estate, including the Sarasota Milk Company's notes and mortgage. This assignment occurred some time in June, 1926. The assignment is undated and the certificate of acknowledgment does not state the day of the month when it was made, nor does it appear that the assignment was recorded although the bill alleges in general terms that it was and the special master reported that it was filed on June 28, 1928.

In January, 1926, the Sarasota Milk Company, owner of the property, W. B. Kuhns, treasurer and president of

the company, procured certain work to be done upon the house by Armstrong Cork and Insulation Company by way of furnishing and installing "Cork Board Insulation" in one ice cream ·hardening room and ante room. The contract was completed and last work performed on April 16, 1926. The Sarasota Company paid for the materials and work all that was due for it except the sum of $957.75 ·and the Armstrong Company caused a notice of lien to be filed and recorded against the property on July 7, 1926.

In January, 1927, The Van Eepoel Real Estate Company begun its suit to foreclose the mortgage held by it, the first note having become due in November, 1926, and was not paid. The Armstrong Cork and Insulation Company was made a party defendant.

The chancellor held that the lien of the Armstrong Cork and Insulation Company was prior to that of the mortgage held by the complainant. From that decree the complainant appealed and this court reversed the decree in an opinion handed down March 20, 1929. A petition for a rehearing was granted and the cause orally argued during the last week in January, 1930.

The lien acquired by the Armstrong Cork and Insulation Company was acquired under the provisions of Sections 3495, 3496, 3499 and 3517, Rev. Gen. Stats. Notice of the perfected lien was filed within three months after the performance of the labor and entire furnishing of material. See Section 3517, Rev. Gen. Stats., *supra*.

Work under the contract was begun by the Armstrong Cork and Insulation Company on April 12, 1926. Material was shipped under the contract March 1, 1926, and the contract was completed on April 16, 1926. It cannot be said with any degree of certainty that on the last mentioned date the execution of the mortgage had been completed by· attaching to it the seal impression of the Sarasota Milk Com-

pany. The sealing of an instrument of that character by a corporation is necessary to its validity. See Secs. 5660, 5665, Comp. Gen. Laws, 1927. Nor was it entitled to record until it was thus duly executed. See Sec. 5699, Comp. Gen. Laws, 1927.

The case may be determined on this point because if no mortgage came into existence until after the work upon the building was completed by the Armstrong Company but before the notice of its lien was filed there would be no question of the superiority of the mortgage lien in the absence of any fraud perpetrated upon the Armstrong Company by mortgagor and mortgagee.

While the deeds of corporations may not be required to be witnessed by subscribing witnesses, our ''statute recognizes the doctrine universally obtaining, that corporations in such matters speak and act through their corporate seal.'' See International Kaolin Co. v. Vause, 55 Fla. 641, 46 So. R. 3.

Although there is no statute in this State which requires mortgages of real estate to be under seal of the mortgagor the general rule as to the mode of execution and the formalities required in the case of absolute conveyances of land are applicable to mortgages. A radical defect in the execution of a mortgage, not a trifling informality but the lack of some essential, may prevent it from being recorded or deprive it of all effect as against subsequent encumbrancers without notice, but will not destroy its validity as between the parties. Dyson v. Simmons, 48 Md. 207; Beatty v. Clark, 20 Cal. 11.

A mortgage executed without a seal, in the states where it is required, is not a legal mortgage. All mortgages by corporations should be executed under the official seal of the corporation, which is customarily an impression upon the paper. See 1 Jones on Mortgages (8 Ed.) Sec. 100.

In equity it amounts to a compact for a mortgage and as such creates no lien as against purchasers from the mortgagor or as against his creditors without notice. See Erwin v. Shuey, 8 Ohio St. 509; Gabel Lumber Co. v. West, 95 Nebr. 394, 145 N. W. R. 849; 41 C. J. 417.

An instrument which as shown by its own terms is designed by the parties as a security for the payment of money may be enforced as an equitable mortgage though wanting in the formal execution of it as a legal mortgage. See Margarum v. J. S. Christie Orange Co., 37 Fla. 165, 19 So. R. 637.

In that case, however, the mortgage was executed under the seal of the corporation. It was deficient, if at all, only in the matter of witnesses. At common law attestation of a deed or mortgage was not necessary to its validity and is therefore only necessary when required by statute. Walker v. Heege, 78 Fla. 667, 83 So. R. 605.

It is essential that the seal of a corporation shall be affixed to its written contracts which are required by law to be under seal. See Grand Lodge K. of P. v. State Bank, 79 Fla. 471, 84 So. R. 528.

If the instrument which was signed in the name of the Sarasota Milk Company to the Tampa Stock Farms Dairy Company before the seal of the Sarasota Milk Company was impressed upon it could be regarded or treated as an equitable mortgage and enforced as between the parties in equity it may have been entitled to record as a contract concerning real property upon proof of execution. See Sec. 5699-5779, Comp. Gen. Laws, 1927.

The informal execution of the instrument may have been a sufficient writing to satisfy the statute of frauds. See Walters v. Miller, 70 Fla. 432, 70 So. R. 629; Tucker v. Gray, 82 Fla. 351, 90 So. R. 158; Kalil v. Nat. Bank of Gainesville, 81 Fla. 543, 88 So. R. 383.

In the latter case delivery of the deed was the essential requisite to its validity as a conveyance of land, although it was deemed sufficient as an instrument in writing signed by the party to be charged.

In West Virginia and other states it is held that such an instrument though not effectual as a deed or mortgage at law may be treated as an equitable mortgage and entitled to record under the statute and is valid against subsequent purchasers and creditors when recorded. Atkinson v. Miller, 34 W. Va. 115, 11 So. E. R. 1007, 9 L. R. A. 544 n; Gest v. Packwood, 39 Fed. R. 525.

No question of that kind, however, exists in this case as there was no record or attempted record of the mortgage until it was completed as a legal mortgage  According to the testimony of Mr. Van Eepoel it was agreed to be kept off the record until the instrument was perfected as a legal mortgage by impressing upon the paper the seal of the corporation.

In these circumstances was the lien of the Armstrong Company superior or inferior to that of the unrecorded instrument called a mortgage held by the Van Eepoel Real Estate Company?

The Armstrong Company, when it furnished the material and performed the labor had no notice, actual or constructive, of the existence of the mortgage. The lien was perfected, the Armstrong Company was a creditor of the Sarasota Company with a lien against its property, before the so-called mortgage or the assignment of it to the Van Eepoel Company was recorded. The mortgage was not in existence as a legal mortgage; it was unrecorded when the Armstrong Company became a creditor and lienor of the Sarasota Company.

A subsequent purchaser or creditor having a lien by way of judgment, mortgage or otherwise and without notice of a prior unrecorded legal mortgage or conveyance would be

protected against such unrecorded conveyance or mortgage. See Feinberg v. Stearns, 56 Fla. 279, 47 So. R. 797; Carolina Portland Cement Co. v. Roper, 68 Fla. 299, 67 So. R. 115; Rogers v. Munnerlyn, 36 Fla. 591, 18 So. R. 669; First Nat. Bank of St. Augustine v. Kirby, 43 Fla. 376, (text 387) 32 So. R. 881; Hopkins v. O'Brien, 57 Fla. 444, 49 So. R. 936; Myers v. Van Buskirk, 96 Fla. 704, 119 So. R. 123.

In Spellman v. Beeman, 70 Fla. 575, 70 So. R. 589, where the subject matter dealt with was personal property the court held that the record of the chattel mortgage is a substitute for the possession of the property by the mortgagee; that a subsequent mortgagee is on the same footing as a subsequent purchaser with regard to unrecorded mortgages under our statute and the prior unrecorded mortgage being void as to the subsequent mortgage continues to be void as to such mortgage which the subsequent record of the prior mortgage does not restore to priority over the second although recorded before the latter is recorded. The Court said: ''The statute conclusively presumes that the effect of keeping the mortgage off the record and the failure of the mortgagee to take possession of the property, is to deceive and mislead the creditors and subsequent purchasers without notice and for a valuable consideration and declares such mortgage to be invalid as against such creditors and subsequent purchasers''.

Section 3495 R. G. S. 1920 (Sec. 5349 C. G. L. 1927) provides for liens in favor of material men and laborers prior in dignity to all others accruing thereafter. Section 3517 Rev. Gen. Stats. 1920 (Sec. 5380 Comp. Gen. Laws 1927) in the second paragraph dealing with the acquisition of liens as to real estate and as against purchasers and creditors provides as follows:

"As against purchasers and creditors of such owner without notice, such lien shall be acquired upon real estate only from the time of the record in the office of the clerk of the circuit court of the county where the real estate lies of a notice of such lien. Such notice shall contain a statement of the amount claimed, a description of the property upon which the lien is claimed, and a notice of the intention to hold a lien for the said amount, and shall be verified by the oath of the lienor or his agent. It shall be filed only after the labor has been entirely performed and the materials entirely furnished.

"No such notice of a perfected lien shall be effectual against creditors or purchasers of the owner without notice unless it be filed within three months after the entire performance of the labor or the entire furnishing of the material".

But the recording of the lien has no retroactive effect upon a purchaser and by a parity of reasoning upon a lien creditor who acquires his legal mortgage or judgment after the mechanic or materialman has completed his contract but before the record of his lien. See Axtell v. Smedley & Rogers Hdw. Co., 59 Fla. 430, 52 So. R. 710.

The recording law however, Section 3822 Rev. Gen. Stats. 1920 (Sec. 5698 Comp. Gen. Laws 1927) provides that no conveyance, transfer or mortgage of real property or of any interest therein nor any lease for a term of years or longer shall be good or effectual in law against creditors or subsequent purchasers for a valuable consideration and without notice unless the same be recorded according to law.

That section places creditors with liens and subsequent purchasers upon the same footing in so far as prior unrecorded conveyances or liens are concerned. Stockton

v. Nat. Bank of Jacksonville, 45 Fla. 590, 34 So. R. 897; Carolina Portland Cement Co. v. Roper, *Supra;* Southern Bank & Trust Company v. Mathers, 90 Fla. 542, 106 So. R. 402; Sirkin v. Schulper, 90 Fla. 68, 105 So. R. 151; Hopkins v. O'Brien, *supra.*

If as to such creditors and subsequent purchasers no mortgage on real estate is good or effectual in law or equity until recorded, then as to creditors and subsequent purchasers therefore the mortgage does not become a lien until recorded. But the materialman and laborer who under a contract with the owner furnishes material and performs labor upon a building is not only a creditor of the owner of the land but acquires a lien upon the land as against such owner. It follows that a mortgage executed before the acquisition of the materialman's lien but recorded after the acquisition of the lien and before the completion of the contract, or recorded after the completion of the contract and after record of notice of lien, becomes a subsequently acquired lien.

In the case of People's Bank of Jacksonville v. Arbuckle, 82 Fla. 479, 90 So. R. 458, this Court said that: "The recording of the mortgage affords notice thereof to all concerned, and gives it priority over all liens accruing thereafter". A "mortgagee must ascertain at his peril what liens have been acquired prior to the *recording* of the mortgage by persons who have begun to furnish labor or material for construction or repairs on the property."

In the Arbuckle case where there was a question of the priority of a mortgage lien over laborer's and materialmen's liens the mortgage was executed November 4, 1919, and recorded twenty-five days thereafter on November 29, 1919. One of the lienors, Jones Lumber Company, began furnishing building material to the mortgagor owner on November 14, 1919, and continued to March 16, 1920.

There were other lienors who furnished materials and labor covering a period of several months from October, 1919, to March 15, 1920. None of them under special continuing contracts. In this connection the Court, speaking through Mr. Justice WHITFIELD, said "Where labor or material is supplied under a contract or a running open account that is designed to continue until the completion of the construction or repairs, the lien once acquired may continue until satisfied, even though other liens may be acquired after the beginning and before the completion of the contemplated transactions under the continuing contract or open account where the continuity of the contract or open account is not terminated". The furnishing of material after the *record* of the mortgage, said the learned justice, "makes the mortgage have priority".

There is no distinction in principle between the reason of the statutes relating to the recording of real estate mortgages and the statutes relating to the recording of chattel mortgages. The purpose being to prevent the misleading and deception of creditors of the owner of the property or subsequent purchasers from them. It requires no great imagination to perceive the doorway to fraud which might be opened if such was not the law.

It was definitely held in Palm Beach Bank and Trust Company v. Lainhart et al., 84 Fla. 662, 95 So. R. 122, that liens of laborers and materialmen are acquired individually and separately by each and attach from the moment the labor is performed and the material furnished, and if such labor is performed or materials are supplied upon a continuing contract to supply the same for the building the lien attaches or is acquired from the moment the first material is furnished or labor supplied under the contract and covers all material furnished or labor supplied thereunder.

Mr. Phillips, in his work on mechanics' liens, says: "A mechanic's lien is superior to all liens acquired after the work commenced, and to all prior liens of which the mechanic had no notice actual or constructive." Phillips on Mechanics' Liens, (3rd Ed.) p. 398.

It is said in 40 C. J. 300 that in a majority of jurisdictions it is held that in order for a mortgage to have priority over a mechanic's lien it must be recorded before the mechanic's lien accrues and the mere fact that it was executed before that time will not give it priority if it is not recorded until afterward, unless according to some, but not all, authorities, claimant had actual notice of the mortgage. When a mortgage is not recorded within the time prescribed by statute it is postponed to mechanics' liens which accrued after its execution but before it was recorded although such liens were not perfected until after the mortgage was recorded. See O'Neill v. Lyric Amusement Co. et al., (Ark.) 178 So. W. R. 406; Small v. Foley, 8 Colo. A. 435, 47 Pac. R. 64; Thielman v. Carr et al., 75 Ill. 385; City of Ortonville v. Geer et al., 93 Minn. 501, 101 N. W. R. 963.

The question presented in this case is involved in no little difficulty, which is produced by the seeming conflict in judicial opinion. The conflict, however, is more apparent than real and grows out of the many different statutes dealing with the acquisition of materialmen and laborers' liens and the recording statutes. Pervading the law upon these subjects is the underlying principle that while the purchaser or mortgagee of real estate in good faith and for value shall be protected in his acquired rights, that protection shall not be extended to the exclusion of the rights of others who through the procrastination or lack of diligence of the first have been mislead to the latter's detriment. It is the principle of equitable estoppel.

Under the common law a mortgage upon real estate to constitute a lien was not required to be recorded. O'Neill v. Lyric Amusements Co., *supra;* 23 R. C. L. 170.

The rule *"prior in tempore portior est in jure"* obtained at common law, but to obviate frauds arising from secret conveyances statutes were enacted in the several states requiring the registration of conveyances in order to render them valid as against subsequent bona fide purchasers. The history of the development of such statutes and their varying effect in different jurisdictions is both interesting and instructive. A full note on the subject may be found in Ann. Cas. 1912 A. p. 194.

Through them all, however, the purpose runs clear not only to preserve a record of title to lands but to protect intending purchasers and incumbrancers against the evil of secret grants. Patterson v. DeLa Ronde, 8 Wall. 292, 19 L. Ed. 415; Antony v. Butler, 13 Pet. 423, 10 L. Ed. 229; 23 R. C. L. 171.

The recording statutes of the different jurisdictions, while of one general tenor, vary in their particular provisions in each jurisdiction as to what class of persons can object to a mortgage as a superior claim on the ground of want of record. In some states the protection is accorded to subsequent purchasers of bona fide and for value. In this State, the protection is accorded to subsequent lien creditors as well as subsequent purchasers. The statutes of some states provide that the mortgage does not become a lien until recorded. In this State its is a lien from the date of its execution but invalid as to subsequent purchasers and subsequent lien creditors without notice until recorded. The lien laws of some states provide that the lien of a materialman or laborer does not become effective until notice of it is recorded. In this State it is effective from the moment the material is furnished or labor sup-

plied against the owner and subsequent lien creditors who acquire their liens during the progress of the work or the furnishing of materials and is good for the entire value of the material and labor thereafter supplied under the contract.

The purpose of all such lien statutes was expressed by the Supreme Court of Massachusetts in Wall v. Robinson, 115 Mass. 429, "The statutes are designed to give to the mechanic who by his labor and skill enhances the value of an estate the security of a lien upon the estate to the extent he has thus added to its value."

The purpose of the recording statute of this State is to protect such creditors of the owner of an estate from the fraud which may follow upon the failure to record an existing mortgage upon the estate.

The materialman or laborer, when engaged to construct or repair buildings upon the land of the record owner, goes to the county record and accepts as truth what that record proclaims. If it shows that the employer is the owner of the land and no prior liens exist against it he proceeds, if he has no actual knowledge of prior liens, with the furnishing of materials and labor in the confidence of the statute that from the moment he furnishes material and labor he has a lien upon the property for the material furnished and the labor performed under the contract. The filing and record of the notice of lien merely tolls the statute, which requires enforcement of the lien in a certain time, and protects the lienor against subsequent liens.

As the Tampa Stock Farms Dairy Company acquired no legal mortgage upon the properties of the Sarasota Milk Company until the mortgage was executed by impressing upon the written instrument the seal of the mortgagor corporation, it cannot be said to have acquired a lien prior to the acquisition of the materialman's lien against such prop-

erties by the Armstrong Cork and Insulation Company. Not until the final act of executing the mortgage deed by impressing the corporation mortgagor's seal upon the document did the Tampa Stock Farms Dairy Company have a legal mortgage lien upon the property. Between the date of writing the instrument intended to be a legal mortgage and the date of the final act (attaching the seal) which made the written instrument a legal mortgage of the corporation, the Armstrong Cork and Insulation Company acquired its lien as materialman and laborer upon the properties and by completing the contract perfected its. lien.

Now, if the Tampa Stock Farms and Dairy Company obtained its mortgage lien by a duly and properly executed instrument after the Armstrong Cork and Insulation Company had perfected its lien by completing its contract then the Tampa Stock Farms Dairy Company was a subsequent lien creditor to the Armstrong Cork and Insulation Company which had a lien by reason of the work done and material furnished in repairing the property. But. the latter's lien was not effective against a subsequent lien creditor in good faith and without notice of the statutory mechanic's and laborer's lien unless the materialman or laborer had filed notice of his perfected lien as required by statute before the subsequent lien creditor of the owner of the property acquired his lien in good faith and without notice. See Sec. 5380, Par. 2, Comp. Gen. Laws, 1927.

Now, the Armstrong Cork and Insulation Company completed its contract with the Sarasota Milk Company on April 16, 1926. Notice of the perfected lien was filed on July 7, 1926. The Sarasota Milk Company completed the execution of its mortgage to the Tampa Farms Dairy Company by impressing its seal upon what up to that time was. a mere simple agreement in writing and the then legal.

mortgage was recorded on April 21, 1926, five days after the perfected lien of the Armstrong Cork and Insulation Company and two months and a half before notice of the Armstrong Company's lien was filed.

There is nothing in the evidence to show that the Tampa Stock Farms Dairy Company knew of the existence of the Armstrong Cork and Insulation Company's lien nor that the latter company knew of the former as a secured or unsecured creditor of the Sarasota Milk Company. That the Tampa Stock Farms Company delayed taking the mortgage lien from the Sarasota Milk Company until the latter could secure its seal did not affect the good faith of the transaction. The Tampa Company only jeopardized its own interest thereby, because other lien creditors or purchasers from the Sarasota Milk Company without notice could have obtained superior claims to that of the Tampa Company and when the Tampa Company finally acquired its mortgage lien it would be as to such other purchaser or previously acquired lien holders a subsequent lien creditor.

If the Tampa Stock Farms Dairy Company became such a lien creditor without actual or constructive notice of the Armstrong Cork Company's perfected lien, it follows that the latter's lien would be inferior to the mortgage lien of the Tampa Stock Farms Dairy Company.

The evidence leads strongly to the inference that the Tampa Stock Farms Dairy Company obtained its legal mortgage from the Sarasota Milk Company after the Armstrong Cork Company had perfected its lien by completing its contract, that is to say, after April 16, 1926.

As to the Armstrong Cork Company, therefore, the Tampa Stock Farms Dairy Company became a subsequent lien creditor of the Sarasota Milk Company and not affected by the Armstrong Cork Company's lien, because

notice of that lien was not filed until two months and a half afterwards.

In this view of the case I think the Court should adhere to the former decision in this case reversing the decree of the chancellor.