HENRY G. DARCEY et al. *v.* MATILDA J. LAKE et al.

1. MULTIFARIOUSNESS DEFINED. — By multifariousness in a bill is meant the improperly joining in one bill distinct and independent matters, and thereby confounding them; and the case under consideration is an instance.

2. SAME — HOW TAKEN ADVANTAGE OF. — When a bill is multifarious the court *sua sponte* may take the objection at the hearing, but the defendant can object only by special demurrer, which is necessary to reach a defect in the form and structure of the bill, as multifariousness is.

3. SAME — CASE UNDER REVIEW. — The decree of the chancery court in this case was reversed, because, while the bill was pronounced to be multifarious, the demurrer was general and not special.

4. JURISDICTION OF EQUITY TO SUBJECT EQUITABLE ASSETS, OR CHOSES IN ACTION. — A creditor cannot resort to a court of equity to subject equitable assets, or choses in action, not subject to be taken upon execution, to the payment of his debt, until he has obtained judgment at law upon his demand, and issued execution, and had return of *nulla bona*.

APPEAL from the chancery court of Claiborne county. SMILEY, J.

The facts of this case, which exhibit the precise point on which its decision was made to turn, are minutely and clearly stated in the opinion of the court.

*S. A. Baldwin* and *T. Y. Berry*, for appellants.

It was objected in the court below that the bill was multifarious, both as to subject-matter and to parties defendant. It is impossible, say all the authorities, to lay down any universal rule as to what constitutes multifariousness in a bill; and the application of the rule is held to depend upon the particular circumstances of the case presented. Butler et al. v. Spain et al., 27 Miss. 234; Story's Eq. Pl., § 539; 1 Daniell's Ch. Pr. and Pl. 343.

If McCaleb had been alive, he would, unquestionably, have been a proper party defendant, both as trustee under the deed of trust of May, 1840, and as party grantor to the deed of May, 1851; and, being dead, his executor, Creighton, became a proper party; for leaving out of consideration all privity between him and the present complainants as creditors of Lake, yet there is a privity and connection

between him and the other defendants growing out of their transactions and relations to the trust property which made him, and on his death, his executor, a proper party to the bill. Story's Eq. Pl., §§ 271–271 *a ;* Delafield et el. v. Anderson, 7 Smedes & Marsh. 638, 639 ; Butler et al. v. Spain et al., 27 Miss. 236, 238 ; Snodgrass et al. v. Andrews et al., 30 ib. 488, 489. The last case cited is very similar in its main features to the case at bar, and, in our judgment, is conclusive in favor of complainant's bill. But in Dick v. Dick, 1 Hogan, 290, cited in 1 Daniell's Ch. Pr., p. 342, note 1, and also with approbation in 1 Smedes & Marsh. Ch. 24, it is said that "if a bill does not pray for multifarious relief, it cannot be objected to for multifariousness, though the case stated would support a prayer for multifarious relief." "Multifariousness as to one defendant constitutes no necessary ground of objection by the other defendants ; for a bill may be multifarious as to one defendant and not to the rest ;" and in such case the objection ought not to prevail. Story's Eq. Pl., p. 321, note 3, § 278.

But even if Creighton, as executor of McCaleb, was improperly joined as one of the defendants, still the court ought not, for that ground alone, to have peremptorily and summarily dismissed the whole bill, but should have contented itself merely with dismissing the bill as to him ; and, if multifarious as to the subject-matter, the court should not have so dismissed the bill without giving a reason therefor, or any opportunity to amend the same ; but, under the liberal principles of equity pleadings and of our statutes of amendments, should have permitted the complainants to amend their bill. Code of 1857, art. 49, p. 457 ; ib., art. 189, p. 510 ; Hunt v. Walker et al., 40 Miss. 592, 593 ; 38 ib. 645 ; Neale v. Weales, 9 Wall. (U. S.) 8, 9 ; Story's Eq. Pl., §§ 883–887 ; 1 Daniell's Ch. Pr. 402

It was also objected in the court below that the statements of the bill were inconsistent, and that that was good ground for sustaining the demurrer. The complainants were not the original parties to these transactions, and as to

them were groping in the dark, and finding the facts different from what they supposed them to be when they filed their original bill, filed an amended bill, setting up a different state of facts from those alleged in their original bill ; but this was no ground to dismiss the bill, but if it embarrassed the defendants in their defense, the complainants should have been compelled to elect upon which they would rely.    Murrell v. Jones et al., 40 Miss. 573.

If a demurrer is improperly taken to the whole bill, though it were well taken as to part, yet the same should be overruled, unless the bill should be insufficient in all respects as to the relief sought ; so defective that judgment according to law and the right of the case could not be rendered.    38 Miss. 598 ; 35 ib. 688 ; 27 ib. 420 ; 34 ib. 100.

This summary method of disposing of the case is not in accordance with the enlightened jurisprudence which, in this the post meridian of the 19th century, is the pride and boast of Britain and America, which has and is constantly seeking to sweep away those cobweb technicalities and intricacies of pleading, devised in a dark if not barbarous age by cunning and astute lawyers, more for the purpose of evading than advancing the cause of justice ; which seeks "to bring the merits of the controversy between the parties fairly to trial," and for that purpose allows amendments on the most liberal terms ; which authorizes the court, even on its own motion, and at the hearing, in order " to bring before it all matters necessary to enable it fully to decide upon the rights of all the parties," to order a cross-bill to be filed for that purpose (2 Daniell's Ch. Prac. 1651), which, as in the case before cited from 9 Wall., will order the bill at the hearing to be amended to correspond with the facts made by the proofs, and which, as in Dease v. Moody, 31 Miss. 623, whatever may be the specific relief prayed for, will, under the general prayer, grant that relief which the allegations of the bill and the facts proven may justify, although such relief may be inconsistent with the specific relief prayed for.

*John B. Coleman*, for appellees.

The bill is multifarious. It sets out in the first place, as a bill to foreclose a mortgage given to Champlin by George Lake and Matilda J., his wife, to secure the payment of four notes, made by George Lake alone to Champlin, and by Champlin assigned to the appellants, the mortgage property being shown in the bill to be the separate property of Mrs. Lake. It then converts itself into a *quasi* creditor's bill, and in behalf of all the creditors of Lake alone, who will unite with appellants upon a sweeping allegation that Lake died seized and possessed of a large estate, real, personal and mixed, and without specifying or locating one single item of this imaginary estate, but simply alleging that no administration has been taken out, calls for a delivery of said estate from the defendants, and then asks the chancery court to assume probate jurisdiction over it, and to have it sold, and the proceeds applied to pay any balance remaining due to appellants, after the sale of the mortgaged property, and to distribute the residue among the other creditors of Lake, who may come in and contribute.

The amended bill then travels back to a deed of trust, made by Lake in May, 1840, to Jonathan McCaleb, as trustee, to secure McCaleb and other creditors of Lake, and to two sheriff's sales of Lake's property made in 1841, under judgments rendered against him (Lake) in 1836 and 1837, at which sales McCaleb became the purchaser, and avers that Champlin, at the request of Lake, advanced the money with which McCaleb paid for the property, purchased at said sheriff's sales, as well as other money to pay some of the debts secured in the deed of trust, and that Lake and McCaleb always promised Champlin that he should be repaid said advances, that said advances were evidenced by the promissory notes of Lake, or otherwise, and were by Lake renewed, or otherwise kept alive, until March 12, 1859, when they were included in, and forms the sole consideration of the notes from Lake to Champlin, secured by the mortgage of Lake and wife.

It then avers that the deed made by McCaleb, on the 24th of March, 1857, was made to defraud the creditors of Lake, and especially Champlin. (This is the deed under which Mrs. Lake holds her undivided one-third interest in the land mortgaged by her and her husband to Champlin, and of which appellants seek a foreclosure.) It then avers that McCaleb has long since departed this life, and makes Creighton, his executor, a defendant (McCaleb died in 1853, and his will was probated April 28, 1853), and then prays that McCaleb's conveyance of 24th of March, 1851, to Mrs. Lake and her daughter and son, may be canceled, and the property surrendered, etc.

The foregoing recapitulation is all that is necessary to show that the bill is multifarious. It improperly joins in one bill, distinct and unconnected matters against the same defendant. It joins several matters of distinct natures against several defendants in the same bill. It involves all the parties in a litigation, · in portions of which neither of them have any interest. To instance : McCaleb's executor has no interest in the foreclosure of the mortgage executed by Lake and wife to Champlin. He has no interest in the cancelment of the deed to Mrs. Lake and her son and daughter. He has no interest in the estate of George Lake, and no decree or relief or discovery is sought against him.

The two children of Mrs. Lake have no interest in the foreclosure of the mortgage, as that only covers the interest of Mrs. Lake, and the general outside creditors of Lake have no interest in the foreclosure.

As authority clearly showing that this bill is beyond all question multifarious, and was properly dismissed upon demurrer, upon that ground alone, I refer the court to Story's Eq. Pl. 224–228 ; 1 Daniell's Ch. Pr. 384.

PEYTON, C. J. :

On the 12th day of March, 1859, George Lake, Sr., executed to J. W. Champlin three promissory notes for $3,660 47 each payable in two, three and four years thereafter, and

to secure the payment of the same the said George Lake and Matilda J., his wife, on the 16th day of July, 1859, executed to said J. W. Champlin a mortgage on certain real and personal property, situate in Claiborne county in this state, being the same land which was conveyed by one Jonathan McCaleb to the said Matilda J. and her children on the 24th day of March, 1851.

On the 15th day of March, 1862, the said J. W. Champlin indorsed and delivered to Darcy and Wheeler two of said notes, and on the 18th day of September, 1862, he indorsed and delivered the other of said notes to Garthwaite, Lewis & Stuart. And on the 17th day of August, 1866, Henry G. Darcy and William Wheeler, under the firm name and style of Darcy & Wheeler, and Caleb C. Garthwaite, William M. Lewis and William Stuart, under the firm name and style of Garthwaite, Lewis & Stuart, filed their bill in the chancery court of Claiborne county against Matilda J. Lake, Stephen F. Smith and Alice, his wife, and George Lake, Jr., to foreclose the said mortgagors' equity of redemption, and for a sale of the property mortgaged as aforesaid to satisfy the notes held by the complainants as assignees as aforesaid.

The bill alleges that George Lake, Sr., departed this life some time in the year 1863, intestate, leaving real and personal estate, which came to the hands of the defendants as his only heirs at law, and which they refuse to apply to the payment of his debts; that no administration has been taken upon his estate, and that the notes, to secure the payment of which the mortgage was given, remains wholly unpaid, and that the property mortgaged is insufficient to pay them. The bill prays a discovery from the defendants of what estate, real and personal, the said George Lake died seized and possessed of, and that the same, when discovered, may be sold and applied to the payment of the complainants' debt; that an account be taken of the amount due them respectively, and that defendants be required to pay the same by a short day, and, in default thereof, that they be forever foreclosed and barred of and from all right

to redeem said mortgaged property, and that the same be sold to satisfy the amounts respectively found due the complainants.   And the bill further prays, that an account may also be taken of the assets and estate, real and personal, of which the said George Lake died seized and possessed, and also of the debts due to other creditors of said decedent, who may come in and contribute to this suit, and that said assets and estate, when discovered, be collected, sold and applied to the payment of any balance that may remain due the complainants after the sale of the mortgaged property, and to the payment and satisfaction of the debts due to the other creditors who may come in and contribute as aforesaid, and that a receiver may be appointed to take charge of the mortgaged property, and also to take charge of the assets and real and personal estate of the said deceased, when discovered, and to collect the debts, if any, due the decedent, and to collect the rents, issues and profits of said estate.

On the 6th day of July, 1867, the complainants filed an amended and supplemental bill, in which they allege that the said Jonathan McCaleb, combining with the said George Lake, Sr., to cheat and defraud the creditors of the said Lake, did, without any consideration therefor, on the 24th day of March, 1851, by deed of that date, convey to said defendants, Matilda J. Lake, Alice Lake (now Alice Smith) and George Lake, Jr., the property covered by the said mortgage. The amended bill prays that said deed may be declared fraudulent and void as to the creditors of the said George Lake, deceased.

The defendants demurred to the amended bill, and the demurrer was sustained and the bill dismissed, and the complainants appealed to this court, and assign for error the action of the court below in sustaining the demurrer and dismissing the bill.

The question presented by this record for our solution is, is the amended bill of the appellants multifarious?   By multifariousness in a bill is meant the improperly joining in

one bill distinct and independent matters, and thereby confounding them. When tested by this rule, the bill in this case will be found to be multifarious. 1. It is a bill to foreclose a mortgage for the benefit of the complainants. 2. It is a creditor's bill, seeking to have the estate of their deceased debtor administered and distributed in a court of equity. 3. It seeks, on the part of creditors at large, to set aside a conveyance of real estate, alleged to be fraudulent as to them. This can be done only by judgment creditors, for it is universally agreed that a creditor cannot go into a court of equity to subject equitable assets, or choses in action not subject to be taken upon execution to the payment of his debt, until he has obtained judgment at law upon his debt, and issued execution, and had a return of *nulla bona.* Farned v. Harris, 11 Smedes & Marsh. 366, and Brown v. the Bank of Mississippi, 31 Miss. 458 ; Vasser v. Henderson, 40 ib. 519.

Under our judicial system, as it existed at the time when this bill was filed, the probate court was the proper forum for the administration of the estates of decedents. It was clothed with ample powers, both in the extent of its jurisdiction and its mode of procedure for the accomplishment of the principal objects for which resort was some time had to a court of equity in England. Hence, it is said by high authority, that in this country courts of equity do not, ordinarily, interfere in the administration of estates, and when they do so, it is in aid of the courts of probate, and for the accomplishment of some specific end not readily attainable in the courts of probate, after which the cause is remanded to the probate court with the decree of the court of equity, and becomes a part of the proceedings there. That the final settlement of the estate may remain in that court. 1 Story's Eq. 544, § 543 a.

As a creditors' bill, no other creditors than the complainants could have any interest in the foreclosure of the mortgage, and, therefore, the bill should not have been expanded into a creditors' bill. The claims asserted in the

bill are of so different a character, that the court will not permit them to be litigated in one record. Nor is the bill more felicitous in its prayers. The original bill prays for a foreclosure of the mortgage and a sale of the property therein specified, to pay and satisfy the complainants' respective claims, secured by the mortgage. The amended bill prays that the conveyance to the mortgagors of the property mortgaged be set aside as being fraudulent as to creditors. This, of course, would defeat the title of the mortgagors, and thereby sweep away the only ground upon which the appellants' bill could be maintained as a foreclosure suit.

Where a bill is multifarious, the court may take the objection at the hearing *sua sponte*, but the defendant can take the objection only by demurrer, and cannot make the objection at the hearing.

Multifariousness is an objection to the frame and form of the bill, which, as we have seen, can be taken by the defendant only by demurrer. Demurrers are either general or special. They are general when no particular cause is assigned, except the usual formulary, that there is no equity in the bill. They are special when the particular defects or objections are pointed out. The former will be sufficient when the bill is defective in substance. The latter is indispensable where the objection is to the defects of the bill in point of form. The want of due form constitutes a just objection to the proceedings in every court of justice; for to reject all form would be destructive of the law as a science, and would introduce great uncertainty and perplexity in the administration of justice.

The demurrer in this case was a general demurrer, which reaches defects in substance only, and not in form. And as the objection to the appellants' bill was one which went to the form and structure of the bill, and which could only be raised by special demurrer, the court below erred in sustaining the demurrer and dismissing the bill.

The decree is reversed, the demurrer overruled, and cause remanded, with leave to the appellants to amend their bill.