THE FIRST NATIONAL BANK OF ST. AUGUSTINE, FLORIDA, A CORPORATION UNDER THE LAWS OF THE UNITED STATES, WILLIAM C. MIDDLETON AND ROBERT J. OLIVER, PARTNERS DOING BUSINESS AS MIDDLETON & OLIVER, APPELLANTS, VS WALTER J. KIRKBY, GEORGE H. P. SEDDING, JOHN E. BURNSED, GEORGE D. T. DOWE, JAMES T. RUSSELL, THE EAST FLORIDA LAND AND PRODUCE COMPANY, LIMITED, A CORPORATION, JOHN HOPE FINLEY AND FRANCIS J. MONCRIEF, TRUSTEES, AND THE ᴵNATIONAL ᴵBANK OF JACKSOVILLE, FLORIDA, APPELLEES.

1.  On an appeal from an order overruling a general demurrer to a bill for want of equity, neither the question of multifariousness or misjoinder of parties in the bill can be raised in the appellate court for the first time, where such questions were not presented below, either by an express ground of the demurrer, or *ore tenus*, as could have properly been done, at the argument of said demurrer.

2.  Under section 1732 Revised Statutes a book-keeper of a corporation conducting a saw-mill business, and another employee whose duty it 'was to keep a record of the time of the other employees and to attend to a commissary run in connection with such mill, and another employee who was under contract to haul logs to the mill at the wages of five dollars per· day, using his own team in so doing, are all entitled to a lien for their wages on the lumber produced by such mill

3.  Under section 1742 Revised Statutes parties who are given liens on personal property, whether in possession or not, are entitled to enforce such liens as against purchasers and creditors *with notice* of such liens. *Creditors without notice*, within the meaning of said section, can only consist of

Nat. Bank of St. Augustine v. Kirkby et al.—Syllabus.

creditors who have, without notice of such liens, acquired liens by judgment or otherwise, and can not apply to general creditors without liens.

4.  Where a corporation conducting a saw-mill business has eight miles of railroad track laid with iron rails, that is used exclusively in connection with such mill business as an appurtenant to such mill, and that is not permanently located, but subject to removal from one locality to another as the timber hauled thereon becomes exhausted, the employees of such a corporation have a lien for their wages under section 1732 Revised Statutes upon such iron rails.

5.  General powers conferred upon an agent by a power of attorney must be construed with reference to the special powers in connection with which the general authority is given; and where there is a special power given therein as to the particular feature of the business authorized to be conducted, and an express limitaion is therein put upon the authority of the agent, such limitation will control.

6.  A general power as managing agent of a corporation in the conduct of its business, does not clothe such agent with authority to mortgage the property of his principal.

7.  A mortgage executed by an agent of a corporation, of its property may be ratified by such corporation either expressly or, impliedly, by its acts, but no such ratification can be implied in the absence of knowledge of the mortgage by the corporation.

8.  A bill in equity brought to enforce laborers' liens aggregating less than $1,000, that does not show the existence of any other liens upon the property, except those held by other parties made defendants to the bill, whose liens are alleged to be subordinate to those of complainants, and that does not allege inadequacy of security for the liens of complainants, and that does not allege insolvency of the debtor, and that fails to allege any misconduct whatever on the part of the debtor with regard to its property, does not authorize the appointment of a receiver to take charge of the property of such debtor consisting of a saw-mill and its business, stock on hand, eight mile of railroad track and its equipments and 60,000 acrees of land.

Appeal from the Circuit Court for St. Johns County.

378 SUPREME COURT. [43rd Fla.

Nat. Bank of St. Augustine v. Kirkby et al.—Statement of Case.

### Statement.

Walter J. Kirkby, George H. P. Sedding and John E. Burnsed complainants below, on September 17th, 1894, filed their amended bill of complaint against the East Florida Land & Produce Company, Limited, The National Bank of Jacksonville, The First National Bank of St. Augustine, William C. Middleton and Robert J. Oliver, copartners as Middleton & Oliver, George D. T. Dow, James T. Russell, and F. J. Moncrief and J. H. Finley, Trustees, alleging that the East Florida Land and Produce Company was the owner and in possesion of a certain saw and planing mill and machinery, eight miles of railroad, two locomotives and ten log carts and twelve railroad cars, 350,000 feet of lumber sawed by said mill and certain lands described in an exhibit not in the record sent to this court, but presumably the same lands placed in the hands of the receiver; that the complainants were in the employ of the East Florida Land and Produce Company and worked for said company in and about the said mill, under continuing contracts, that said company was indebted to the said Kirkby in the sum of $412 for labor as book-keeper; to the said Sedding in the sum of $137 for labor as time-keeper, and to the said Burnsed in the sum of $444.15 for labor as teamster, the said labor having continued to August 31st, 1894; that complainants on September 1st, 1894, had severally filed in the Clerk's office notices of their respective liens, in which notices the said Kirkby and Sedding claimed liens upon the mill, its machinery, and the logs, lumber and building material in the mill, lumber yard and premises of the East Florida Land and Produce Company at Neoga, Florida, and the said Burnsed upon

this property an also all mules, horses, harness and carts on said premises. The bill further alleged that their liens upon said property was prior in dignity to all others; that the two banks and Middleton & Oliver claimed liens or interests in said property, but same were subordinate to lien of complainants; that Dow and Russell had levied attachment on same, but such liens were subordinate to those of complainants, and that Moncrief and Finley, Trustees, claimed a mortgage on said property, but the lien thereof was subordinate to complainants lien; that complainants were in destitute circumstances and unable to give bond. · The relief prayed was that a receiver be appointed for all of said property; that the said Dow and Russell be severally enjoined from prosecuting their attachment suits; that an account be taken of what was due complainants severally and other holders of labor liens who should come in, prove their claims and share costs of suit; that the property 'be sold and after paying costs and attorneys fees the balance of the proceeds be applied *pro rata* to the payment of such labor liens. Then followed a prayer for general relief and subpoena.

On the same day application was made for appointment of receiver in accordance with the prayer of the bill, and on the hearing of such application Middleton & Oliver filed an affidavit of Middleton that on August 31st, 1894, he for Middleton & Oliver had purchased the lumber described in the bill and at the time of said purchase had no notice or knowledge of any indebtedness of the East Florida Land and Produce Company to its employees, and an affidavit of their attorney, W. A. MacWilliams, that on said August 31st, he had prepared the bill of sale for such purchase, and had searched the records and found no lien against said lumber, and a certificate from the clerk

that no lien of labormen, mechanics or material men was filed against said East Florida Land and Produce Company prior to September 1st, on which day Middleton & Oliver had filed said bill of sale for record. On said hearing The First National Bank of St. Augustine filed an affidavit of John T. Dismukes, its president, that said bank had made loans to the East Florida Land and Produce Company and held mortgages on the rolling stock and eight miles of railroad iron described in the bill; that at the time of the making of such loans and of the receipt and recording of such mortgages it had no notice of the existence of any labor liens thereon, and had reason to believe and had believed that a portion of such loans had been used by said company to pay its laborers, and that same had, when the mortgages were executed, been paid in full.

On said September 17th the court appointed the receiver as prayed, directing him to take possession of all the property described in the bill of complaint, including fifty or sixty thousand acres of lands belonging to the East Florida Land and Produce Company, to operate the mill in so far as was necessary to saw up the logs on hand and to dress such lumber as it was profitable to dress, and requiring him to file a ten thousand dollar bond before entering upon his duties as receiver. The order further enjoined the further prosecution of the said attachment suits, and directed the sheriff to deliver the attached property to the receiver.

On the fifth day of November, 1894, The First National Bank of St. Augustine filed its answer alleging that it held four mortgages upon the said railroad iron, locomotives, cars and carts as follows: one dated September 27, 1890, recorded September 29, 1890; one October

43rd Fla.] JUNE TERM, 1901. 381

Nat. Bank of St. Augustine v. Kirkby et al.—Statement of Case.

8th, 1890, recorded October 9, 1890; one December 21st, 1893, recorded December 27th, 1893, and one July 5th, 1894, recorded July 6th, 1894, for loans made prior to their execution to the East Florida Land and Produce Company; that said loans were induced by representation of said company to said bank that said property was free from all liens; that said bank had the records searched for liens, found none, and had no knowledge of any on said property in taking said mortgages; that the said loans were made to keep the said company going, part was for purchase money of the rails in question, and part to pay the wages of complainants and other operatives; that only $1,500 of said mortgages have been paid, and that on August 30, 1894, the East Florida Land and Produce Company turned over to the bank twenty-nine mules, two locomotives and ten log carts and twelve railroad cars to be sold, and proceeds applied to mortgages, and that all of said property except the mules was then in said receiver's hands. The answer further denies that complainants have any lien on said property, and says that if they have it is subordinate to the lien of respondents said mortgages.

On the same day defendants Middleton & Oliver filed a demurrer to the bill for want of equity, which was overruled on June 12th, 1895, and on the first day of July following they filed an answer alleging that on the thirty-first day of August, 1894, they purchased from the East Florida Land and Produce Company the 350,000 feet of lumber in the bill described, the consideration for said sale being an indebtedness of said company to them of $1,620 for supplies furnished it; that said sale was *bona fide* and without knowledge on their part of complainants liens or claims for wages, and that the lumber had been delivered to them and in their possession from the day of sale; that

the claims of complainants if due at all were for "back pay" which had been allowed to accumulate in the hands of the East Florida Land and Produce Company, and not for services in August, 1894, or any next preceding current month.

On December 20th, 1894, the First National Bank of St. Augustine filed a cross-bill against the East Florida Land and Produce Company, The National Bank of Jacksonville and the complainants for the foreclosure of the four mortgages above mentioned, the first for $11,133; the second for $4,173 both covering the said locomotives, cars and carts; the third for $300 and the fourth for $1,200, both mortgages being upon the railroad iron, the bill alleging that $15,957.85 was still due on the mortgage debts, that the liens of the original complainants, if any existed, upon said property were subject to said mortgage liens, the said bank having made the loans and taken the mortgages without notice of any liens actual or prospective upon said property; that no cautionary notices of lien were ever filed by complainants, and the notices filed by them September 1st, 1894, did not embrace the mortgaged property, and alleges that none of said complainants or their fellow employees had at any time any possession of said property; that the Jacksonville bank had a mortgage on a portion of the railroad iron, subordinate to the mortgages of cross complainants. Then followed the usual prayers for relief. Attached to the cross-bill were copies of the mortgages in question, each purporting to be executed by the East Florida Land and Produce Company by an attorney in fact.

On the rule day in April, 1895, decree *pro confesso* was entered against the East Florida Land and Produce Company upon such cross-bill, and on July 12th, 1895,

the original complainants filed an answer to the cross-bill calling for strict proof of the indebtedness alleged therein, denying the execution of the alleged mortgages, admitting the filing of their original bill and averring that their liens upon said property were of superior dignity to any liens or claims of said cross-complainant.

On August 10th, 1895, decrees *pro confesso* in the original suit were entered against the East Florida Land and Produce Company, Dow and Russell, and on the same day the court denied an application made by the East Florida Land and Produce Company which specially appeared for that purpose, to quash the service upon it in said cause.

Testimony in the case was taken and on October 19th, 1896, a decree was entered by the court that the cross-bill be dismissed; that complainants and all others holding liens of equal dignity had a lien prior to all others on the mill, machinery, iron rails, locomotives, cars, log carts, and other machinery and implements used in operating said mill; that they had a lien upon the lands mentioned in said bill subject to the mortgage of Moncrief and Finlay, trustees; that a master be appointed to state the account of what was due complainants and all other creditors of the East Florida Land and Produce Company who should come in and prove their claims; that the master should report the amounts due the several creditors, the order of priority of payment, with the evidence upon which he acted; that in doing this he should be governed by the decree giving priority to complainants and all other persons having labor liens of equal dignity upon the property, and that creditors so coming in might contest each others claims and priorities, except those of the complainants. From this decree The First National Bank of St. Augustine and Middleton & Oliver entered their separate appeals to this court.

The other facts are stated in the opinion of the court.

*W. A. MacWilliams* and *M. C. Jordan,* for Middleton and Oliver.

*J. C. Cooper* and *W. W. Dewhurst,* for First National Bank of St. Augustine.

*W. B. Young* and *A. G. Hartridge,* for Appellees.

PER CURIAM (*After stating the facts.*)

The final decree rendered in this cause is far reaching in extent. It decreed, among other things, the relief prayed by complainants, Kirkby, Sedding and Burnsed in their bill, and that they all others holding liens in equal dignity with theirs have liens prior in dignity to all others on the mill, machinery, iron rails, locomotives, cars, log carts and other machinery and implements used in operating the mill mentioned in the bill of complaint, and it was ordered that a special master named take an account of what was due complainants and all other creditors of the defendant, the East Florida Land and Produce Company, Limited, who should come in and prove their claims within a time specified, and that said master report to the court the amounts due the several creditors and the order in which they are entitled to priority of payment from the proceeds of the sales of property mentioned in the bill of complaint, giving priority to complainants and others having labor liens equal in dignity with theirs under the laws of this State. Among the property mentioned in the bill is 350,000 feet of sawed lumber. It was also decreed that the cross-bill of complainant, the First National Bank of

St. Augustine, be dismissed, and that the moneys expended by the receiver in paying taxes on the lands should constitute a first lien thereon. By interlocutory order previously made in the cause the court directed the receiver to pay out of the moneys in his hands the sum of $581.27 for taxes on real estate, and the sum of $124.25 taxes on personal property due from the East Florida Land and Produce Company to the State of Florida for taxes in the year 1894. The decree further adjudged that the complainants have a lien upon the lands mentioned in the bill, subject to the lien of the mortgage made to the defendants, Moncrief and Finlay, trustees. The First National Bank of St. Augustine and Middeton and Oliver are the only parties who have appealed and only in their behalf is there any contention that the decree is erroneous.

From an examination of the pleadings in this cause and the evidence submitted it appears that the interest of Middelton and Oliver is entirely separate from that of the First National Bank. They claim to have purchased the lumber on the mill yard of the East Florida Land and Produce Company and assert no claim to any other property involved in the suit. The Bank's claim extends to other property, and hence appellants have no unity of interest as to the subject-matter of the litigation.

Proceeding with the separate interests of appellants and the several assignments of error which they may urge for our consideration, we find an objection of Middleton & Oliver to the action of the court in overruling their demurrer to the bill of complaint. Under this assignment they contend that there is an improper joinder of parties complainant in the bill filed to enforce the separate liens of the three complainants. The demurrer of said respondents was for the want of equity. Neither multi-

fariousness nor misjoinder of parties appears to have been assigned as a ground of the demurrer, nor to have been urged in the court below.    Had such objection been so assigned, even *ore tenus,* under the general demurrer filed it would have been properly submitted to the court, but without this having been done it can not be considered here.    Darcey v. Lake, 46 Miss. 109; Fay v. Jones, 1 Head (Tenn.) 442; Labadie v. Hewitt, 85 Ill. 341; Cholmondeley v. Clinton, Turner & Russell 107, text 116; Wake v. Parker, 2 Keen 59; King of Spain v. Machado, 4 Russell, 225; Page and Others v. Townsend, 5 Sim. 395; Delondre v. Shaw, 2 Sim 237.    The nature of the misjoinder is not such as to invoke the action of this court for its correction *sua sponte* as was the case of Bauknight v. Sloan, 17 Fla. 284.

The decree rendered in the cause against Middleton & Oliver is assigned by them as error, and under this assignment it is contended, first, that complainants have no liens under the laws of this State for their respective demands.    We are satisfied that complainants are given liens on the lands of the East Florida Land and Produce Company under section 1732 Revised Statutes which provides as follows: "1732.   For labor as book-keeper, clerk, etc. — In   favor   of   book-keepers,   clerks, agents,   porters,   and   other   employes   of   merchants   and   transportation   companies   and   other corporations;   upon   the   stock,   fixtures   and   other property of such merchants, companies or corporations." Kirkby was employed as book-keeper at the mill, and Sedding was employed in keeping the time of other employes at the mill and attending to the commissary of the company kept in connection therewith, and are entitled to liens on the lumber by the very terms of the statute.  Burnsed

was employed, it appears, to haul logs for the mill at five dollars per day and used his own team in doing so. There was no hiring of the team by the mill company, nor an agreement to pay Burnsed any amount for the use of the team separate from his services, but the agreement was to pay him so much per day for the hauling with his team, and under such a contract he is entitled, in our opinion to a lien for the amount due him. It is further contended under this assignment that Middleton & Oliver were purchasers of the lumber in question without notice of the liens of complainants. Under section 1742 Revised Statutes persons given liens on personal property, whether in possession or not, are entitled to enforce them against purchasers and creditors with notice, and we are of opinion that the court was authorized to hold, on the showing made, that said respondents were such purchasers, though it was shown that they are also general creditors. They rely upon the defence that they were purchasers, and not as creditors. Creditors without notice within the meaning of said section of the statute means those who have acquired liens by judgment or otherwise, and not general creditors. Rogers v. Munnerlyn, 36 Fla. 591, 18 South. Rep. 669.

The action of the court in directing the receiver to pay taxes due the State on personal and real estate of the East Florida Land and Produce Company out of funds in his hands derived from the sale of lumber and other personal property, is also assigned for error by Middleton & Oliver. The taxes in question were due for the year 1894, and by the fifteenth section of Chapter 4115 acts, approved June 2nd, 1893, it is provided that personal property shall be responsible for the taxes on real estate, and real estate shall be responsible for the taxes on per-

388 SUPREME COURT. [43rd Fla.

Nat. Bank of St. Augustine v. Kirkby et al.—Opinion of Court.

sonal property. The State was, therefore, entitled to her taxes out of any money in the hands of the receiver, whether derived from real or personal property of the East Florida Land and Produce Company. In the order made for the payment of the taxes the court directed that those due on real estate should constitute a charge thereon, and in the final disposition of the case no doubt such order will be carried out and the personal property relieved of any taxes due on the lands. We see no error in the order made in reference to the payment of the taxes.

These appellants also assign as error the order appointing the receiver, but as this is also assigned as error by the National Bank of St. Augustine, we will consider it in connection with the errors assigned by the latter.

One of the errors assigned by the National Bank of St. Augustine is that the court erred in decreeing that complainants have a lien prior in dignity to all others upon the mill, machinery, iron rails, locomotives, cars, log carts and other machinery and implements used in operating the mill mentioned in the complainants' bill. In its answer to the bill the bank claimed to be a mortgage creditor without notice of complainants' liens, so far as the following property, and no other, was concerned, viz: the two locomotives, twelve railroad cars, ten log carts, and eight miles of railroad iron. The proof shows that this property all belonged to the East Florida Land and Produce Company, a corporation, and that it was all used in connection with the operation of the mill. The railroad iron was laid upon certain lands, presumably of the company, but the proof shows that it was not regarded as being permanently fixed to the land, but only for temporary purposes, in procuring logs for the mill, and that such iron is

43rd Fla.]                JUNE TERM, 1901.                389

Nat. Bank of St. Augustine v. Kirkby et al.—Opinion of Court.

frequently moved and relaid on other lands whenever the timber suitable for saw-logs becomes exhausted in the particular locality.   We are satisfied that all of this property claimed by the bank is of the character contemplated by section 1732 Revised Statutes, before referred to, and that complainants have under that section a lien upon it, prior in dignity to all others, except as against purchasers and creditors without notice.   We, therefore, proceed to ascertain whether the bank was such a purchaser or creditor with respect to the property mentioned.   The mortgages relied upon by it and offered in evidence purport to have been executed in the name of the company, in each instance by an attorney in fact, and in connection with the mortgages the bank offered certified copies from the records of St. Johns county of the powers of attorney under which the attorneys purported to act.   These copies and the mortgages were upon complainants' objections excluded from evidence, and this ruling is assigned as error.   As the whole evidence is exhibited to us in the record, that excluded as well as that admitted, we shall not stop to decide the propriety of that ruling, but consider the case as if the excluded evidence had been admitted.   It is contended on behalf of the lien claimants that the powers of attorneys so offered in evidence gave no authority to the attorney to execute the mortgages, and we concur with that view.   In paragraphs 1 and 11 of the powers of attorney is given in broad terms the right to conduct the business of the company in this country, and to execute any contracts, deeds, writings, etc., necessary thereto.   Paragraphs 2 to 10 give special powers in connection with the business, those bearing upon the right of the attorney to execute the mortgages in question being paragraphs 8, 9 and 10.   The first of these gives the right to open and

390                JUNE TERM, 1901.          [43rd Fla.

Nat. Bank of St. Augustine v. Kirkby et al.—Opinion of Court.

continue in the name of the company a current account with such bank or banks in the United States as the attorney may think fit, and to draw checks on same, but forbids him to overdraw such accounts without authority from the directors. The ninth paragraph authorizes him to endorse checks, bills of exchange, promissory notes and bills of lading and to draw bills from time to time upon the company or persons or companies having business with it, in any of the connections aforesaid. The tenth paragraph authorizes the attorney to draw bills from time to time upon the company for the purpose of providing money for current expenses, and to place the proceeds of any such drafts to the credit of the banking account aforesaid or to remit the same to the company or otherwise deal with the same as the directors may from time to time appoint. The language used in paragraphs 1 and 11 is broad, but this must be construed with reference to the special powers in connection with which the general authority is given (1 Am. & Eng. Ency. of Law, 1000, and authorities cited), and where there is a special power given as to a particular feature of the business authorized to be conducted, and express limitations upon the authority of the attorney therein, these will control. The power sought to be exercised was that of mortgaging the railroad iron, log-carts, locomotives and railroad cars of the company in order to effect or secure loans of money for its use. The powers of attorney had expressly prescribed the manner in which the attorneys could pledge the credit of the company in order to raise funds for the business, by authorizing them to draw on the company for that purpose; and had placed a restriction upon their right to incur even an unsecured indebtedness to the bank by over-draft, without express authority.

43rd Fla.]                 JUNE TERM, 1901.                    391

Nat. Bank of St. Augustine v. Kirkby et al.—Opinion of Court.

This excludes the idea that the attorneys were by this
instrument authorized not only to incur the alleged indebt-
edness to the bank without express authority, but in doing
so to mortgage so substantial a part of the company's
property as above described.   Nor was the right to mort-
gage such property within the powers of the attorney as
its managing agent.   4 Thompson on Corp. Sec. 4849,
citing Dispatch Line v. Bellamy Man. Co., 12 N. H. 205;
S. C. 37 Am. Dec. 203; Whitwell v. Warner, 20 Vt. 425.
If, therefore, the mortgages are valid, it is because the
course of business between the parties or their conduct
was such as to show ratification of the act of the agent in
executing them, or some grant of authority to the agent
other than that claimed in the powers of attorney.  No
other grant of authority was attempted to be shown, and
after a careful consideration of the testimony the court
finds no sufficient evidence to show ratification of any of
the mortgages except the one dated September 27, 1890.
As to the property embraced in that mortgage, upon
which the proof shows there is now due the sum of $1,000
and interest, the bank is a creditor without notice to the
extent of the amount due on that mortgage, and its rights
as such mortgagee are superior to the liens of the com-
plainants, but as to the other property embraced in the
other mortgages, the complainants' rights are superior to
those of the bank, although we hold in a subsequent part
of this opinion that these mortgages are subject to fore-
closure under the cross-bill against the East Florida Land
and Produce Company, Limited.   The East Florida Land
and Produce Company, Limited, was an English corpor-
ation, having its principal office in London, but conducting
a saw mill business in St. Johns county in this State. The
management of this business was committed to its man-

392          JUNE TERM, 1901.          [43rd Fla.

Nat. Bank of St. Augustine v. Kirkby et al.—Opinion of Court.

aging agent at St. Augustine, who was also a director of
the company, but whose powers as such agent were con-
ferred by the powers of attorney we have already consid-
ered.   The attorneys are shown to have frequently con-
tracted debts with the bank in the business of the com-
pany beyond the scope of the written authority, and most
if not all of these debts became known to and were rati-
fied by the company.   But it is not shown that the com-
pany had any knowledge of the execution of any of the
mortgages except the first one (dated September 27,
1890), and without such knowledge no ratification can be
implied (Oxford Lake Line v. First Nat. Bank, 40 Fla.
349, 24 South. Rep. 480), and no express ratification was
attempted to be shown.   As to the mortgage of Septem-
ber 27, 1890, it is shown that the company in London
made payments upon the debts secured by it, and never
repudiated it, though it had knowledge of its execution,
and such conduct is sufficient, in our judgment, to ratify
this mortgage.

On the thirtieth of August, 1894, the managing agent
for the company executed a written instrument authoriz-
ing the bank to take possession of and sell certain property
embraced in its mortgages and apply the proceeds to the
payment of said mortgage debts.   This agent had no
authority to do this under his written power of attorney,
and there is no evidence that the company ever ratified
his act in this respect.

It is further contended by the bank that the court
erred in decreeing a first lien upon the property of the
East Florida Land and Produce Company in favor of all
persons holding liens of equal dignity with complainants,
and in decreeing that the master should take an account of
what was due all creditors of the company who should

43rd Fla.]     JUNE TERM, 1901.     393

Nat. Bank of St. Augustine v. Kirkby et al.—Opinion of Court.

come in and prove their claims. The bill does not allege that there are any other lien creditors of equal dignity with complainants. It does not allege that the East Florida Land and Produce Company was insolvent, or show any reason for a general marshalling of its assets, or for bringing in any of its lien or general creditors. Under the statutes in force at the time this suit was brought persons holding several liens of the nature held by these complainants could not properly join in a suit to enforce them under the circumstances disclosed by this bill if a timely objection was interposed. The features of the decree now being considered were, therefore, erroneous.

Another assignment of error on the part of the bank complains of the dismissal of its cross-bill. This cross-bill sought the foreclosure of the four mortgages already referred to, and to have the foreclosure decree declare the lien of the mortgages superior to the liens of complainants upon the property embraced therein.

A decree *pro confesso* had been entered against the East Florida Land and Produce Company, the alleged mortgagor, which entitled the bank to proceed to a decree against it foreclosing its mortgages, so far as that company was concerned. As we have seen, however, none of these mortgages except the one dated September 27, 1890, were, as against the complainants entitled to priority over their liens. The court should, therefore, have retained the cross-bill, and in the decree of foreclosure of the mortgages adjudged the priorities between the bank and complainants as we have stated them to exist. The dismissal of the cross-bill was, therefore, erroneous.

The bank further assigns as error the part of the decree adjudging a lien in favor of complainants Kirkby, Sedding and Burnsed, on the land of the East Florida

394    JUNE TERM, 1901.    [43rd Fla.

Nat. Bank of St. Augustine v. Kirkby et al.—Opinion of Court.

Land and Produce Company, Limited. The bank is not shown to have any lien on the lands of said company by virtue of any of its mortgages, and its cross-suit is not in the nature of a creditor's proceeding, nor is the bill of complainants Kirkby, Sedding and Burnsed, as we have already seen, a creditor's suit, and we do not see that the bank is entitled to assign error on the feature of the decree adjudging a lien on the land. The rights of the bank as a general creditor are not concluded by the proceeding in any way in this suit.

It is further insisted on the part of the bank that the decree *pro confesso* against the East Florida Land and Produce Company, under the bill filed by Kirkby, Sedding and Burnsed, is erroneous because of defective service on said company. As stated, the Produce Company is not complaining in this court of anything that was done in the lower court, though it did appear there specially to quash the service against it. The entire record in reference to the service on the East Florida Land and Produce Company does not appear to have been brought up on this appeal, but without reference to this, it does appear from recitals in the order appointing the receiver that all parties, complainants and defendants, then appeared before the court. It can not, therefore, be held that the East Florida Land and Produce Company was not properly before the Circuit Court.

The action of the court below in appointing a receiver for the property of the East Florida Land and Produce Company is assigned as error by each of the appellants. The bill upon which this action was based alleged that the East Florida Land and Produce Company owned certain mill and railroad property, lumber and lands; that complainants held laborers' liens upon the property for stated

sums aggregating less than $1,000, and that certain other parties, made defendants to the bill, held liens or claims upon the property, but that the liens of complainants were superior to all others except such other labor liens as might be in force against the property. The bill alleged that it was filed for the benefit of such other of these lien holders as should come into the suit, but this, as we have seen, was improper, and can not furnish support for the appointment of a receiver. There was no allegation in the bill of inadequacy of security for the liens of complainants, no allegation of insolvency of the East Florida Land and Produce Company, and no allegation of any misconduct whatever on the part of said company with regard to its property. Under such a bill as this the appointment of a receiver to take charge of a saw mill, its business and stock on hand, eight miles of railroad and its equipment and 60,000 acres of land, as an incident to the enforcement of liens aggregating less than one thousand dollars was obviously improper, and such decree as against the bank and Middleton & Oliver was erroneous.

Those portions of the decrees which have been pronounced erroneous in this opinion are, as against the appellants, reversed, and in other respects the decrees are affirmed, and the cause is remanded with directions for the court below to enter a decree in accordance with this opinion, to dispose of the matter of receivership according to law, and for such further proceedings as may be proper.