## PATTERSON *v.* DE LA RONDE.

1. The 3333d article of the Civil Code of Louisiana, which in English is as
   follows:

   "*The registry* preserves the evidence of mortgages and privileges during ten
   years, reckoning from the day of *their* date; *their* effect ceases even against the
   contracting parties if the inscriptions have not been renewed before the expira-
   tion of this time, in the manner in which they were first made,"

   relates to the effect of the inscription, when not renewed, not to the
   effect of the mortgage, and declares that the inscription preserves such
   evidence for ten years, and that *its* effect ceases if not renewed before
   the expiration of that period. This construction of the article reached
   by reading the English and French version together—the English and
   French being printed in the same volume, by authority of the legisla-
   ture of that State, in parallel columns, and the French being thus:

   "Les inscriptions conservent l'hypotheque et le privilége pendant dix années à
   compter du jour de *leur* date; *leur* effet cesse même contre les parties contrac-
   tantes si ces inscriptions n'ont été, renouvelées avant l'expiration de ce delai, de
   la même manière quelles ont été prises."

2. The general doctrine, where registry of conveyances and mortgages is
   required, that knowledge of an existing conveyance or mortgage is, in
   legal effect, the equivalent to notice by the registry, is the law of Louisi-
   ana as expounded by the decisions of her highest court.

3. Prescription of a mortgage and vendor's privilege does not begin to run,
   until the debt secured has matured.

4. By the law of Louisiana, where property, susceptible of being mortgaged,
   is to be sold under execution, the sheriff is required to obtain, from the
   proper office, a certificate of the mortgages, &c., against it, and to read
   it aloud before he cries the property; and also to give notice that the
   property will be sold subject to them  The purchaser in such case is obliged
   to pay to the officer only so much of his bid as may exceed the amount
   of the mortgages, &c., and is allowed to retain the amount required to
   satisfy them.

   The law, in these particulars, having been followed in a sale made in
   this case, and, in his deed to the purchaser, the marshal having recited
   his proceedings at the sale; his announcement to the bidders of the
   subsisting mortgages on the property, of which the first was a mortgage
   of one Mrs. McGee to a certain Hoa; and the retention of the sum bid
   by the purchaser to satisfy the amount due thereon; *Held,* that by the
   terms upon which the purchaser took the property at the marshal's sale,
   and the stipulations contained in the marshal's deed accepted by him
   and placed on record, he assumed to pay the amount due on Hoa's
   mortgage, and could not, therefore, avoid compliance with his contract,
   in this respect, on the ground that Hoa's mortgage had, in fact, at the

time, lost its priority by not being reinscribed, before the expiration of ten years from its first inscription.

ERROR to the Circuit Court of the United States for Louisiana.

The case was thus: In April, 1853, Pierre Hoa sold to one Mrs. McGee a plantation and several slaves attached thereto, in Louisiana, for the sum of ninety-five thousand dollars, and for a portion of the purchase-money took her seven promissory notes, two of which were payable, respectively, in five and six years from date. In the act of sale before the notary, which was subscribed by the parties, the officer, and the attending witnesses, the purchaser stipulated for a special mortgage on the property, as security for the payment of her notes; and it was declared that the vendor's mortgage and privilege should extend, not merely to the land and slaves, but to the appurtenances of the land and the improvements. The act of sale was duly recorded in the register's office of the parish.

Before the maturity of the last note given by Mrs. McGee on this purchase, and in July, 1858, she executed a mortgage upon the same property to one Patterson, to secure several notes made by her at the time, amounting to thirty-five thousand dollars. This mortgage was also duly recorded in the office of the register of the parish. In it reference is made to the previous mortgage given by Mrs. McGee in favor of her vendor, Hoa.

In October, 1865, Patterson brought a suit in the Circuit Court for the District of Louisiana upon these notes, and, in February, 1866, recovered judgment for their full amount and interest. Upon this judgment execution was issued, and the mortgaged property was sold by the marshal to the plaintiff, he being the highest bidder, for the sum of $26,200.

By the law of Louisiana, where property, which is susceptible of being mortgaged, is to be sold under execution, the sheriff is required to obtain, from the office of the register of mortgages in the parish, a certificate setting forth the mortgages and privileges inscribed against the property on

the books of the office, and to read the certificate to the bystanders at the place of sale before he cries the property. (Code of Procedure, Art. 678.) The sheriff is also required to give notice at the sale that the property will be sold subject to all privileges and hypothecations, of every kind, with which it is burdened. The purchaser in such case is only obliged to pay to the officer so much of his bid as may exceed the amount of the privileges and special mortgages upon the property, and is allowed to retain in his own hands the amount required to satisfy them.

The law, in these particulars, was followed in the sale made on the execution in this case. The marshal states in his return that the sum bid by Patterson was retained in his hands—*first*, to pay the mortgage in favor of Hoa; and, *second*, to be applied on account of marshal's and clerk's fees, and the purchaser's own claim. And, in his deed to Patterson, the marshal recites his proceedings at the sale; his announcement to the bidders of the subsisting mortgages on the property, of which the first was the mortgage of Mrs. McGee to Hoa; and the retention of the sum bid by the purchaser to satisfy the amount due thereon.

Soon after the sale, and before the return was made by the marshal, or the deed to the purchaser was executed, Hoa filed what is termed in Louisiana a petition of intervention and third opposition, a proceeding by which a third person is allowed to become a party to a suit between other persons, for the purpose, among other things, of enabling him to present any claim which he asserts on the proceeds or property seized and sold under the order or judgment of the court. The object of the intervention of Hoa was to obtain payment, out of the proceeds of the sale, of the amount due him of the purchase-money of the mortgaged premises. To the petition, Patterson, in the first instance, filed an answer, stating that, at the sale, he bought the property for the sum of $26,200; that out of this sum he undertook, according to law and the proclamation of the marshal, to pay whatever sum might be due to Hoa, alleged to be a creditor of McGee, with a mortgage and a vendor's privilege on the plantation

superior to his own; but that the amount was uncertain and was not stated by the marshal, and did not appear by the register's certificate read by him at the sale.   The answer then proceeds to detail certain transactions which he insisted resulted in a novation of the debt of McGee to Hoa, and to a forfeiture of Hoa's right, by virtue of his mortgage and privilege, to prior payment out of the proceeds of the sale.

No point was made in this court upon the sufficiency of the new matter thus set up, and no further reference to it need be made.   Subsequently, and on the day set for the trial of the intervention, Patterson filed a peremptory exception to the demand contained in the petition, to the effect that the mortgage and priority of privilege of Hoa had been prescribed, and that his privilege had been lost by reason of the non-reinscription of the mortgage to him within the delay provided by law.

On the trial the peremptory exception was overruled, and the intervention and third opposition were sustained, and judgment was given for the representatives of Hoa (he having died during the pending proceedings) for $25,000 and interest, " with preference and privilege in the proceeds of the plantation sold" superior to that of all persons, and particularly to that of Patterson, the plaintiff.   A second trial granted by the court resulted in a similar judgment.

The 3333d section of the Civil Code of Louisiana, published by authority of the legislature of the State, in English and French, and in parallel columns, is as follows:

| IN ENGLISH. | IN FRENCH. |
| --- | --- |
| *The registry* preserves the evidences of mortgages and privileges during ten years, reckoning from the day of *their* date; *their* effect ceases even against the contracting parties if the inscriptions have not been renewed before the expiration of this time in the manner in which they were first made. | Les inscriptions conservent l'hypothèque et le privilége pendant dix années à compter du jour de leur date; leur effet cesse même contre les parties contractantes, si ces inscriptions n'ont été renouvelées avant l'expiration de ce delai de la même manière qu'elles ont été prises. |

*Mr. T. Durant, for the appellant:*

Under the laws of most of the United States, a mortgage

is perfectly good, as between the parties to it, whether it be recorded or not. Those States brought this principle of their jurisprudence from the country of their origin, England, in which country registries were not obligatory, nor ever made, except in special places. And while most of the States of our Union require registries, it is only in order that the rights of subsequent incumbrancers or purchasers *bonâ fide*, and without notice of the prior privilege, may not be cut out by secret liens. As between the parties, the mortgage, though never recorded, but on the contrary kept secret, remains as in the land from which their people came and derive the body of their laws; that is to say, it remains valid.

But in Louisiana, the whole system of law springs from a source quite different from that whence most of the States derive theirs. The genius of the system is different, as different as are France and England, as the French codes and the common law. Great errors are made in the discussion of a question like this, by arguing from one system to the other. Yet independently of the preconceived ideas natural to lawyers or judges bred wholly in the system of the Northern and Western States, and necessarily ignorant of the French system, there is no reason why it may not be enacted that a mortgage not registered every ten years shall not bind property against any one, as why it may not be enacted that unless so registered it shall not bind the property as against subsequent creditors or purchasers. Creditors and purchasers can examine registries after ten years have expired as well as before, and, in most of our States, do.

Now the enactment of the code, if we take the English side of it, settles this dispute at once. And it does but lead us to the same conclusion as does our argument, *à priori*. Why shall we not take that English side? The State of Louisiana, from which the French *language* has been departing ever since our purchase of it, and is now departing more and more, acknowledges, in the interpretation of its code, the supremacy of the language in which the Constitution of our country is indited and proclaimed; the English alone.

But if we take the French side of the column, what then? The question even then is, at most, but doubtful. The expression "*leur effet*" may refer to the *two* singulars, "*l'hypothèque*" and "*le privilége*," it being a rule as old as grammar itself, that two singulars allow and sometimes require a plural verb or adjective. This is just what the English side declares is the true syntax. The English side—the authoritative side—is plain. The French side is capable of two meanings, one of them being that which is undeniably the meaning of the English side.

The *recital* in Patterson's deed is unimportant. Purchasers of property sold under *fi. fa.* in Louisiana, are required indeed to take it subject to real mortgages if they be recorded. But if upon investigation it is found that no real mortgages exist, the purchaser is not bound to take it subject to mortgages that, by the sheriff's blunder, are only imagined. Nor is there injustice in this. The amount of the non-existent mortgage retained is not necessarily so much gained by the purchaser if he does not pay the amount to the imaginary mortgage. For if the mortgage erroneously assumed to be a binding one, prove not to be so, then the purchaser owes the amount to the judgment debtor and must pay *him*.*

*Mr. Evarts, contra*, having observed that the French side of the code, literally translated, reads thus:

" *The inscriptions preserve the mortgage and the privilege* during ten years, reckoning from the day of their date; their effect ceases, even against the contracting parties, if the inscriptions have not been renewed before the expiration of this time, in the manner in which they were first made"—

went into a critical examination of the whole system of inscriptions of privileges and mortgages, and their extinction by prescription, as regulated by the Louisiana code, arguing that, upon a right view of them, it was manifest that those same general principles, so familiar to us in their applica-

---

* Pickersgill v. Brown, 7 Louisiana Annual, 305

tion to the recording acts of the other States and England, equally obtained in the law of Louisiana.

That inscription was of no application, in respect of the efficiency of the instruments between the parties to the contracts or their privies, in law or fact, or those brought by their own contract, into knowledge, or obligation of knowledge, of the privilege or mortgage in question.

That in those relations, it added nothing to the force or durability of the contract, and that its omission neither enervated nor curtailed the contract itself.

That it was solely to affect " *third parties,*" within the definition of the code, with knowledge of what was lawfully inscribed, by giving them the opportunity of knowledge by inspection, and visiting the neglect of inspection upon *them,* and not upon the party who had made the *required* inscription.

That reinscription, or its omission, was of no more consequence between parties and privies to these contracts, *in regard to the efficacy of the contracts,* than original inscription; the whole measure of its application being to " *third parties,*" within the definition of the code, and only in limitation of the period of time for which they were affected by the opportunity of inspection, and the consequences of its neglect.*

That Patterson was, by the force of his own contracts with Hoa's vendee, held to the knowledge and the maintenance of Hoa's vendor's privilege, and to knowledge of and submission to his mortgage.

That, *as mortgagee,* he took, in terms and in equity, a security only on what estate his mortgagor had, and, on the face of the mortgage to him, had limited her estate to, to wit: the estate over and above the vendor's privilege for the unpaid purchase-money.

That, *as purchaser,* at the marshal's sale, he was affected as a *bidder* by the announcement of this vendor's privilege and mortgage; obtained his deed from the marshal only upon assenting to assume the satisfaction of the *debt* to the vendor

---

* Shepherd *v.* Orleans Cotton Press, 2 Louisiana Annual, 113.

remaining unpaid; and assumed, in the deed, the payment of the amount so due to Hoa.

That the whole defence was rested, not upon any equity or right on his part; nor on any defect of right or equity on the part of the defendant in error; nor upon any policy or principle of the inscription law of Louisiana; but solely upon some literal obstruction of all this right, equity, policy, and principle, found, it is argued, in article 3333 of the code. But that, even this support failed him upon a correct interpretation of the article, and the authorities founded on it.*

Mr. Justice FIELD, after stating the case, delivered the opinion of the court, as follows:

The only error alleged in the action of the Circuit Court lies in its ruling upon the peremptory exception. It is contended here, as in that court, that the mortgage and vendor's privilege of Hoa were prescribed, and that the prescription resulted from the failure to reinscribe the mortgage within ten years from the date of the first inscription.

It is supposed that support for this position is found in article 3333 of the Civil Code of Louisiana; and such would be the case if, in the construction of the article, we were confined to its language, as given in English, in the printed volume published by authority of the legislature of the State. It would seem from its reading, as thus given, that the omission to reinscribe a mortgage within the time designated, was intended to have the effect of defeating and annulling its operation. But, upon examining the language of the article as given in French, in the same volume (the English and French being printed in parallel columns), this construction becomes impossible. Read in the light thus afforded its meaning is obvious. It was intended to declare the effect of the inscription in preserving the evidence of mortgages

* Planters' Bank v. Allard, 8 Martin, N. S. 136; Rachal v. Normand, 6 Robinson, 88; Noble v. Cooper, 7 Id. 44; Robinett v. Compton, 2 Louisiana Annual, 846; Swan v. Moore, 14 Id. 833; Sanders v. Dosson, 3 Id. 587; Haines v. Verret, 11 Id. 122; Thompson v. Parrent, 12 Id. 183; Sauvinet v. Landreaux, 1 Id. 221.

and privileges, and the effect of the omission to renew the inscription in destroying such evidence. It declares. that the inscription preserves such evidence for ten years, and that its effect ceases if not renewed before the expiration of that period. It is the effect of the inscription when not renewed, which ceases, not the effect of the mortgage. The object of requiring reinscription is to dispense with the necessity of searching for evidence of mortgages more than ten years back.*

Besides, the object of all registry laws is to impart information to parties dealing with property respecting its transfers and incumbrances, and thus to protect them from prior secret conveyances and liens. It is to the registry, therefore, that purchasers, or others desirous of ascertaining the condition of the property, must look, and if not otherwise informed, they can rely upon the knowledge there obtained. But if they have notice of the existence of unregistered conveyances and mortgages, they cannot, in truth, complain that they are, in any respect, prejudiced by the want of registry. In equity, and in this country generally at law, they are not permitted to defeat, under such circumstances, the rights of prior grantees or incumbrancers, but are required to take the title or security in subordination to their rights. The general doctrine is that knowledge of an existing conveyance or mortgage is, in legal effect, the equivalent to notice by the registry. And such is the law of Louisiana as expounded by the decisions of her highest court. Thus, in *Robinett* v. *Compton*,† that court said: "The doctrine is now well settled, that the actual knowledge by a purchaser of an existing mortgage or title is equivalent to a notice resulting from the registry. The formality. of recording is for the benefit of the public, and for the purpose of giving notice to individuals. But if a party have knowledge of that of which it is the purpose of the law to notify him, by causing an act, instrument, or lien to be recorded, the effect is the same, and he is as much bound by his personal knowledge as

---

\* Shepherd *v.* Orleans Cotton Press Co., 2 Louisiana Annual, 113.

† Ib. 854.

if his information was derived from an inspection of the record."

The cases of *Planters' Bank of Georgia* v. *Allard*,\* *Bell* v. *Haw*,† *Rachal* v. *Normand*,‡ and *Swan* v. *Moore*,§ are to the same effect.

In the case at bar, Patterson had knowledge of the mortgage and vendor's privilege of Hoa. They are stated in the mortgage to himself, which he placed on record. If, therefore, the act of sale, stipulating for the special mortgage and acknowledging the vendor's privilege, had not, in fact, been recorded, he would have been bound by his knowledge of their existence. He could not have urged the want of inscription to defeat Hoa's priority, and, for like reasons, he cannot urge the want of reinscription.

Prescription of the mortgage and vendor's privilege did not follow from the omission to reinscribe the act of sale. From its nature, prescription could not have begun to run until the debt secured had matured.

But there is a further answer to the objection founded on the want of reinscription. By the terms upon which Patterson purchased the property at the marshal's sale, and the stipulations contained in the marshal's deed accepted by him and placed on record, he assumed to pay the amount due on Hoa's mortgage. He cannot now avoid compliance with his contract, in this respect, on the ground that Hoa's mortgage had, in fact, at the time, lost its priority by not being reinscribed before the expiration of ten years from its first inscription.‖

JUDGMENT AFFIRMED.

---

\* 8 Martin New Series, 136.    † Ib. 243.

‡ 6 Robinson, 58.    § 14 Louisiana Annual, 833.

‖ See *Parker* v. *Walden*, 6 Martin, N. S., 713; and *Noble* v. *Cooper*, 7 Robinson, 44.