JOAQUÍN DÍAZ Y DÍAZ, Plaintiff and Appellant, v. FRANCISCO DELGADO-NEGRONI ET AL., Defendants and Appellees.

No. 4115. Argued February 16, 1928.—Decided July 19, 1928.

*López de Tord & Zayas Pizarro* for the appellant. *José Tous Soto* for the appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

On October 8, 1926, Joaquín Díaz brought an action of unlawful detainer in the District Court of Ponce against Francisco and Antonio Delgado. The defendants demurred to the complaint. Their demurrer was sustained and, without giving the plaintiff an opportunity to amend his complaint, the court rendered judgment dismissing the complaint. The plaintiff moved the court to reconsider its judgment and allow him to amend his complaint, setting forth how he would amend it, and the court overruled his motion. Thereupon the plaintiff appealed to this court and assigned in his brief the commission of twenty-one errors.

The complaint sets up three causes of action. It is alleged in the first as ground for the action that the tenancy is at sufferance, in the second, default in payment, and in the third, use of the leased properties at variance with the contract.

It is so clear that the third cause of action does not lie that we shall disregard it so as not to complicate this opinion unnecessarily. Although the same can not be said so positively of the second cause of action, especially if the proposed amendment be considered, we shall make no lengthy reference to it, inasmuch as in our opinion the judgment appealed from will have to be reversed because the first cause of action undoubtedly states sufficient facts as regards one of the leased properties.

We shall not follow the appellant in his order of arguing the errors assigned. Many of them refer to statements made by the district judge in the opinion on which his judgment is based and therefore have no decisive importance, and several others treat the same question under different aspects. We shall consider only what is fundamental.

The facts on which the first cause of action is based are as follows:

That on October 21, 1924, by a public deed, Andrés Negroni and his wife, Dolores Rodríguez, owners of four rural

properties—A, of 91 acres; B, of 40 acres; C, of 35 acres, and D, of 100 acres—leased them to Francisco Negroni for ten years for twenty-five dollars weekly payable each Monday, the lessee agreeing to deposit the said rent weekly in any bank of Yauco at the disposal of the then owner, Andrés Negroni; that the said lease "never was or has been recorded as to the property under letter D"; that the Negroni-Rodríguez spouses were divorced and the leased properties were divided between them equally; that on March 26, 1925, by a public deed which was recorded in the registry, Andrés Negroni sold half of the said properties to plaintiff Díaz, and on the same day lessee Francisco Negroni and defendants Francisco and Antonio Delgado were informed of that sale; that neither in the said deed of sale nor in any other manner did plaintiff Díaz assume the lease or bind himself to respect it; that on April 7, 1925, by a public deed, Dolores Rodríguez sold to defendants Antonio and Francisco Delgado the other half of the leased properties and the Delgados did not assume the lease or oblige themselves to respect it; that on April 14, 1925, plaintiff Díaz sued the Delgados and prayed for a judgment in his favor for the redemption of the half of the properties acquired by them from Dolores Rodríguez. Judgment for the plaintiff was rendered on February 20, 1926, and in execution of it on August 25, 1926, the marshal, by public deed, conveyed to him the ownership of the other half of the leased properties, the plaintiff not assuming or binding himself to respect the lease; that on the 7th day of April, 1925, but subsequent to the sale made by Dolores Rodríguez to the Delgados, lessee Francisco Negroni, by public deed, subleased for the time still to run on properties A, B, C and D to defendants Francisco and Antonio Delgado, it being stated in the deed that as the Delgados were the owners of half of the properties by purchase from Dolores Rodríguez, the lease became extinguished as to the said half by merger of rights, the sub-lessees being bound to pay only $12.50 weekly to plaintiff Díaz, the owner of the other

half of the properties by purchase from Andrés Negroni, and that the Delgado defendants were withholding the possession of the aforesaid properties, especially that of an undivided half interest in the properties described under letters A, B and C and the whole of the property marked letter D, without paying any rent and against the will of the plaintiff, having refused to deliver the possession to the plaintiff.

It is well to add that in the list of amendments accompanying the motion to reconsider it was proposed to add to the facts averred in the first cause of action the following: "That the cancellation of the lease in regard to the half of the said properties by reason of the confusion of rights mentioned in the sub-lease was duly recorded in the registry of property of San Germán as to properties A, B and C on April 28, 1925, said condominiums appearing free from the said lease."

And moreover that the following appears from the record:

"While José Tous Soto was arguing the motion to reconsider the following incident took place: Defendant.—Was the lease recorded? Plaintiff.—It was recorded, but canceled for confusion of rights as to half of the properties A, B and C, said cancellation having been made to appear in the registry of property. Defendant.—This admission is before the court for the purpose of deciding this case. Judge.—Let that admission form part of the record."

It was likewise stated in the proposed amendments that "it would be stated in the prayer that the tenancy at sufferance is attributed to the whole of property letter D and to a condominium represented by a half acquired from Dolores Rodríguez in the other properties A, B and C, and that the eviction from the rest of the condominiums in those three properties is based on the nonpayment of rent."

The decision of this case, therefore, depends entirely on the construction to be given to section 1474 of the Civil Code which reads literally as follows:

"The purchaser of a leased estate has a right to terminate the lease in force at the time of making the sale, unless the contrary is stipulated, and the provisions of the Mortgage Law (prevent).

"If the purchaser should make use of this right, the lessee may demand that he be permitted to gather the fruits of the crop corresponding to the current agricultural year and that he be indemnified by the vendor for the losses and damages he may have suffered."

From the facts so extracted it will be seen how careful the plaintiff has been in alleging that in no way did he contract against the right which the law recognizes in him of considering the lease terminated on purchasing the leased properties. The attitude of the plaintiff has not been frank as to whether or not the lease was recorded in the registry of property in regard to properties A, B and C. Everything seems to show that it was recorded, the theory of the plaintiff being that it was canceled for merger of the rights when the defendants acquired the half of said properties which later passed to the plaintiff by virtue of the action of redemption; but as it is alleged expressly that the lease was not recorded in regard to the property marked D, the problem inevitably arises. With regard to said property D we are confronted by the case of a lease not recorded in the registry which the purchaser did not bind himself to respect on acquiring the property. That being so, his right to a judgment in unlawful detainer seems so clear under the statute applicable and in force in Porto Rico that it can scarcely be discussed.

The question is not new in this court. In *López* v. *Central Eureka*, 27 P.R.R. 271, we said:

"The appellant maintains that the plaintiff is not a third person because he had direct knowledge of the lease, as appears from the deed of sale, and that, therefore, he was under the obligation to respect the said contract although it was not recorded in the registry.

"It is not possible to accept that theory. Article 2 of the Mortgage Law provides that contracts for the lease of real property shall be recorded in the registry of property, and it is by virtue of such

record that the right arises in the lessee, when the lessor sells the property, to have the purchaser respect his contract under the terms appearing from the registry. If the contract of lease is not recorded, then, unless the contrary has been stipulated, the provision of section 1474, giving the purchaser the right to terminate the lease existing at the time of the sale, remains in full force. The words of the statute show that the legislators had in mind a case where the purchaser had knowledge of the existence of the contract.

"Commenting on section 1571 of the Spanish Civil Code, equivalent to section 1474 of our code, Manresa says:

" 'In accordance with this doctrine, section 1571 lays down the principle that the purchaser of a leased property has the right to a rescission of the lease that was in force at the time of the sale. The starting point of this theory is the consideration that as the lease is a contract between the lessor and the lessee and as the purchaser is a third person as regards the lease, he cannot be affected by a personal right.

" 'Evidently, the code has established by this section another cause for unlawful detainer which does not arise from an act or omission of the lessee like the others we have examined, but from the alienation of the ownership by the lessor, which, in creating a new juridical relation, has a positive influence on that formerly existing by reason of the principles upon which each rests and of the common object of both, which is the property leased.

" 'Before jurisprudence on this article had had time to be formulated, we heard it discussed whether the right conferred upon the purchaser could or could not be exercised in the form of an action of unlawful detainer. We have always maintained the affirmative, because if the right conferred upon the purchaser is the right to terminate a lease so that the property may be entirely at his disposal, the purpose of the action of unlawful detainer can be no other, and if this action lies where the cause appears from a clear and evident fact, notoriously such is the nature of the sale from which the right of the purchaser is derived. There can be, then, no doubt that this is a new cause for unlawful detainer, and that the right of the purchaser must be asserted in this action when the lessee refuses to recognize it voluntarily. Several cases have already gone to the Supreme Court and never has it been denied that that is the proper action.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

" 'The provisions of the Mortgage Law.—These words contained in paragraph 1 of section 1571 establish another exception to the

rule that the purchaser has the right to have the lease terminated. The provisions of the Mortgage Law referred to are those contained in paragraph 5 of article 2, i. e., the determination of the cases in which the lease is recordable; consequently it is a real right and the cases are already known. Also the provision of article 24 of the said law to the effect that recorded instruments shall produce their effects even against creditors specially preferred under the common law.

" 'The consequence of these provisions is that when a lease recorded in the registry of property is involved it constitutes a real right which, by virtue of its being recorded, produces its effects against third persons. The purchaser, as such third person, is bound by it and, therefore, is deprived of his right to have the lease terminated.' 10 Manresa, Spanish Civil Code, 637, 640.

"In the case of *Sosa* v. *Río Grande Agrícola Co., Ltd.*, 17 P.R.R. 1106, this court, in construing and applying said section 1474 of the Civil Code, laid down the following doctrine, which leaves no room for any kind of doubt:

" 'A lease which is made by means of a document wherein it is not stipulated that the possession of the lessee in case of sale shall be respected has a personal character, and even in the presumption that the purchaser of the leased property had knowledge of the existence of such contract, the nature thereof is not altered and the lessee is bound to vacate the property if so required by the purchaser.' "

There are several cases similarly decided by this Supreme Court. We have referred to that of *López* v. *Central Eureka* because it seems to be the only one involving, as the case under consideration, a lease executed by public deed for more than six years and so known to the purchaser when he acquired the leased property.

It has been maintained vigorously in the conference room of this court during the long discussions originated by the consideration of this appeal that a lease for more than six years, although not recorded in the registry, constitutes a real right and therefore that the purchaser of the property, if he have knowledge of the lease at the time of his purchase, is bound to respect it, that is, that the words "the provisions of the Mortgage Law" used by the legislators in section

1474 refer not only to leases already recorded, as held in the said case of *López* v. *Central Eureka,* but also to recordable but not recorded leases.

This theory is supported by an opinion of the Supreme Court of the Philippine Islands. We refer to the case of *T. de Winkleman* v. *Vélez,* 43 Philippine Reports, 604. Speaking for the court, Mr. Justice Romualdez said:

"The fundamental point in this litigation turns on the question whether or not, under the circumstances of the case, the plaintiff as purchaser of the property, can invoke article 1571 of the Civil Code for the purpose of terminating the lease which was in force at the time that the purchase was made.

"Let us see, then, whether the plaintiff is protected by this article of the Code which literally is as follows:

" 'Art. 1571. The purchaser of a leased estate shall be entitled to terminate any lease in force at the time of making the sale, unless the contrary is stipulated, and subject to the provisions of the Mortgage Law.'

"As Manresa observes (10 Civil Code, p. 637), this right is given by the law to such a purchaser as is regarded by it as a third person. Hence, when he is not a third person, either for having been a party to the stipulation to respect the lease, or because he has no such standing under the Mortgage Law, then he is not entitled to terminate the lease.

"The article cited contains, therefore, a general rule on which the plaintiff relies, but which has no application in two cases, to wit: When there is a stipulation to the contrary, and when the purchaser is not regarded as a third person under the Mortgage Law.

"As to the first exception, it is settled that the stipulation to the contrary referred to in this article is that between the seller and the purchaser of the property, and not that between the lessor and the lessee. In the case before us there was no such stipulation in the deed of conveyance of the estate; but the stipulation contained in the contract of lease that the lease should be respected in case the properties were sold, was known to the purchaser who, before buying the property, had read said contract. Consequently, she made the purchase with knowledge of such a stipulation, which thus became incorporated into the contract of sale executed in her favor. It is true that such a stipulation was not expressly stated in the deed of sale, but it was known and consented to by the purchaser.

As the law does not require that this stipulation be reduced to writing, we believe it sufficient if, as in the instant case, although it is only implied, there can be no doubt, that it existed and was consented to by the purchaser. An analogous view has been maintained by this court in the case of Pang Lim and Galvez *vs.* Lo Seng (42 Phil. 282).

"The second exception contained in the above cited article of the Civil Code applies to the contracts of lease referred to in article 2, No. 5, of the Mortgage Law, which says:

" 'Art. 2. In the Registries mentioned in the preceding article shall be recorded:

*　　*　　*　　*　　*　　*　　*

" '5. Contracts for the lease of real property for a period exceeding six years, or such contracts on which rent has been paid in advance for three or more years, or, if having neither of these conditions, they contain a special covenant by which record thereof is required.'

"In these cases the lease considered as a real right (see 'Exposición de Motivos de la Ley Hipotecaria' and 'Legislación Hipotecaria' by Galindo y Escosura, vol I, pp. 459–462) and when registered it is effective against third persons (art. 1549, Civil Code). So that when the lease of an estate falls within one of the cases enumerated in the last cited provision and can, consequently, be registered, and is in fact registered, the purchaser of the estate is not entitled to terminate the lease.

"The lease in question in the present case is for a term exceeding six years. It can, therefore, be registered, and is, for this reason, a real right in the eyes of the law. True, it is not registered, because the estate has not been previously registered, but the plaintiff, the purchaser of the land thus leased, acquired it with full knowledge of the existence, duration and other conditions of the lease, including the stipulation to respect it in case the property was sold, having read the document evidencing it. Is such knowledge equivalent to the registration of the contract of lease so as to take the lease from the operation of the general precept contained in article 1571 of the Civil Code? The judicial decisions give an affirmative answer.

" 'That as one of the principal grounds and objects of the Mortgage Law is the publicity of the encumbrances and liens upon real properties so that nobody may become responsible for anything unknown to him, there can be no doubt that under said law, one cannot be considered as third person, who, although he did not intervene

in the act or contract registered, had, at the time of acquiring the property possessed by him, perfect knowledge of the encumbrances upon it, which doctrine is in harmony with the principles of law, by virtue of which nothing can be impugned which has been accepted without objection, or expressly or impliedly consented.' (Decision rendered Oct. 8, 1885, 58 *Juris Civil,* p. 460.)

"This doctrine has been repeatedly upheld in recent cases by the same Supreme Court, as may be seen from the decisions rendered April 5, 1898, December 6, 1901, May 13, 1903, and March 23, 1906.

" 'The purpose of registering an instrument relating to land, annuities, mortgages, liens, or any other class of real rights is to give notice to persons interested of the existence of these various liens against the property. If the parties interested have *actual notice* of the existence of such liens, then the necessity for registration does not exist. Neither can one who has actual notice of existing liens acquire any rights in such property free from such liens by the mere fact that such liens have not been recorded.

" 'It is our conclusion, therefore, that the defendant having had actual notice of the existence of the mortgage in question against the property cannot take advantage of the failure of the plaintiff to have the same transferred to the new registry under the Mortgage Law. *The effect of this actual notice is equivalent to the registration of said mortgage under the Mortgage Law.'* (Obras Pias *vs.* Devera Ignacio, 17 Phil., 45, 47.)

" 'The object of all registry laws is to impart information to parties dealing with property, respecting its transfers and incumbrances, and thus to protect them from prior secret conveyances and liens. Actual knowledge by a purchaser of an existing mortgage or title *is equivalent* to a notice resulting from the registry.' (Patterson *vs.* De la Ronde, 8 Wall., 292; 19 U. S. (L. ed.), 415; Finlay *vs.* Hinde, 7 U. S. (L. ed.), 128; Landis *vs.* Brant, 13 U. S. (L. ed.), 449; Fowler and Badgett *vs.* Merrill, 13 U. S. (L. ed.), 736; National Bank of Genesee *vs.* Whitney, 26 U. S. (L. ed.), 443; Moelle *vs.* Sherwood, 37 U. S. [L. ed.], 350.)

"A consequence and obvious application of this doctrine, which is common to the Philippines, Spain, the country which left us a a juridical inheritance, containing our laws on the matter, and North America, from which the principles of the Anglo-Saxon law are being taken and incorporated into our laws, is that the plaintiff's actual knowledge of the lease in question and of the stipulation that it should stand in case the property was sold has, in this particular

case and so far as she is concerned, just the same effects as those of the registration of the said lease in the registry of property.

"This being so, this lease cannot but fall also within the last exception enumerated in the above cited article 1571 of the Civil Code.

"The rights, therefore, acquired by the defendant as lessee of the estate above referred to, which were known to the plaintiff at the time of purchasing it, cannot be prejudiced, as they cannot be affected by such a transfer.

"The plaintiff is not, therefore, entitled to terminate the lease in question, and having been subrogated into the legal situation of the lessor, created by the contract of lease which was known to her, it is her duty to respect it *in toto*."

We have transcribed the whole pertinent part of the opinion so as to be fair in stating the contrary points of view. There is no doubt that the reasoning of the Supreme Court of the Philippine Islands is persuasive, but after a new study of the question we are convinced that the theory stated in *Sosa* v. *Río Grande Agrícola Co., Ltd.,* 17 P.R.R. 1106 and *López* v. *Central Eureka,* 27 P.R.R. 271, should prevail. That constitutes a rule of ownership established for many years, followed invariably in subsequent decisions and unchanged by the Legislature notwithstanding the clear manner in which it was stated.

Leaving aside the peculiar circumstances of the Philippine Case (the property was not recorded and there was a stipulation in the lease to respect it in case of sale known by the purchaser), we will say with due respect that in our judgment undue importance was given to the words "third person" as applied to the purchaser to be found in section 1571 of the Civil Code, equivalent to section 1474 of the Porto Rican Code.

That would have been proper if the Civil Code contained only section 1452 equivalent to section 1549 of the Philippine Code reading as follows:

"With regard to third persons, leases of real property, which are not duly recorded in the registry of property, shall be of no effect."

But the Legislature went farther. It recognized in the purchaser generally, irrespective of whether or not he knew of the lease, the right to terminate the lease on the property purchased and established the exceptions as stated. The reference to the Mortgage Law can have effect only when the provisions of the Mortgage Law are complied with, that is, when the lease is recorded.

Scaevola's commentaries on section 1471 of the Spanish Civil Code, equivalent to section 1452 of our Code, are very interesting and throw much light on the scope of the statute in question, but they are too long to be transcribed.

That statute has its roots in the Roman law. The *Partidas* recognized it. Scaevola says:

"In law 19, title VIII, *Partida* V, there is to be found a repercussion of the law transcribed from the Codex.

" 'If a man leases or rents a house or estate for a definite time and the owner thereof sells it before the expiration of the lease, the purchaser thereof can eject therefrom the lessee, but the vendor who leased the same is bound to return as much of the rent as is represented by the time of the lease still to run. . . .' " 24 Scaevola, Civil Code, p. 658.

Two exceptions, however, were admitted by the *Partidas;* first, where the purchaser bound himself at the time of the sale to respect the lease, and, second, when the vendor has leased the property for life to the tenant or his heirs, that is, in cases of perpetual leases.

The authors Gómez and Covarrubias attempted to extend the benefit of the exception to leases for ten or more years, but Gregorio López held a contrary opinion limiting the scope of the law to leases for life and to those transmissible by reason of death.

See 24 Scaevola, Civil Code, 650–732.

In explaining the reasons for drafting subdivision 5 of article 2 of the Mortgage Law as it appears transcribed in the opinion of the Philippine Supreme Court, the following was said in the statement of reasons:

"Neïther leases for a long term of years nor those wherein the rent has been paid in advance in large amounts give birth to a real right. They constitute always a personal obligation. Hence the juridical doctrine that only those who acquire ownership by universal title are bound to respect a lease made by their predecessor in interest, but not those who acquire through a special title. The peculiar circumstances attaching to such leases, the expenses usually incurred by the lessee, and the protection due to good faith, which is the basis of credit, require a modification of the old law in this respect. Practice had taken upon itself the task of paving the way for the reform, turning, in spite of the established tradition, leases which were recorded in the mortgage registries into a sort of real right. Where the written law or the legal doctrine are powerless to meet a need, custom will do it; and when this happens it devolves upon the Legislature to turn into a statute and to give shape and legality to that which has become a recognized need. In this way, without injury to the owner who when alienating or conveying a property had no intention of evading his obligations towards the lessee, without injury to the *bona fide* purchaser who enters into the contract with knowledge of an obligation which passes on to him, the legal rights of lessees are protected in those cases specified in the bill.

"The Committee should not conceal that fact; it has impliedly established therein a true real right."

As may be seen, the authors of the Mortgage Law recognized that neither leases for a long term of years nor those wherein the rent has been paid in advance in large amounts are creators of real rights, but always limited to a personal obligation, whence emanates the doctrine that only one who acquires ownership by universal title is bound to respect the lease made by his predecessor, but not one who acquires by special titles. Recognizing that injustices were thereby committed in many cases and relying on the precedent which converted, notwithstanding the established tradition, into a sort of real right leases which were recorded in the mortgage registries, they opened the doors of the new system and by permitting the record in the registries of the leases referred to, they bestowed on said leases by the fact of their registration the status of a real right.

Record was allowed not only of leases for more than six years, but also of those wherein the rent was paid for three or more years in advance or where their record was stipulated. A logical application of the reasoning compels us to recognize that a lease for six months agreed to be recorded, although not presented in the registry, would constitute a real right. We do not believe that that was the intention of the authors of the Mortgage Law.

We have consulted the jurisprudence of the Supreme Court of Spain and have found several judgments wherein, although the question involved is not discussed, application is made without distinction of section 1571 of the Civil Code, and there is one, that of November 22, 1917, 138 *J. C.* 490, dealing with a lease which commenced on January 1, 1912, and terminated on December 31, 1917, that is, for six years, and it was therein held:

"That the plaintiff having proved his ownership of the property by a deed of sale executed to him, at the instance of the Mortgage Bank, by the Court of first instance duly recorded in the registry of property, and to be in the actual and civil possession judicially granted him, he undoubtedly possesses the personality required by section 1564 of the Code of Civil Procedure to prosecute the action of unlawful detainer against any person who occupies the property under a lease granted by its previous owner, provided he has been given notice under section 1565 of said statutes to terminate the lease, not because of the expiration of the contract, but by the exclusive will of the purchaser in the exercise of the right conferred on him by section 1571 of the Civil Code."

We have consulted also the Spanish commentators. Manresa was quoted extensively in *López* v. *Central Eureka, supra,* and now that we refer to him again it is well to say that although he qualifies the purchaser as third person in regard to the lease agreed to by the previous owner, which undoubtedly gave rise to the conclusion reached by the Philippine decision (43 Philippine Reports, 632, 634), he did so having in mind the literal provision of section 35 of the Mortgage Law which qualifies as third person one who had

had no intervention in the act or contract recorded and took good care later to explain his opinion as follows: "A conse·quence of these provisions is that when dealing with a lease *recorded in the registry* there is involved a real right *which, by virtue of its record,* has effect against third persons." (Italics ours.)

We have quoted from Scaevola and, through him, from Gómez, Covarrubias and Gregorio López.

Nothing definite is found in Galindo or Escriche against our construction of section 1474, and Morell says:

"In treating of real rights we include as one of them the lease, because we consider it as really of that nature.

"In the field of principles the lease may be considered as a real right; on legal grounds it is not, as it is not so considered by the Civil Code, nor are the provisions of the Mortgage Law sufficient absolutely to impart to it that character.

"It appears, however, from the precepts of that law that the record modifies the nature of the lease, actually turning it, as stated by the framers of the statute of 1861, into a real right, but only in cases where that record exists." 1 Morell, *Legislación Hipotecaria,* 384.

Perhaps it should be stated also that notwithstanding the fact that the appellees have been defended by attorneys of great ability, they do not urge that from the mere fact that the lease is for more than six years the purchaser was bound to respect it. Their brief reads as follows:

"If the lease from the Andrés Negroni spouses and Dolores Rodríguez to the Delgado brothers had been recorded at the time of the sale from Andrés Negroni to Joaquín Díaz of a half, the purchaser was bound by such lease as to the purchased half, without any claim to the termination of the lease as to such half, by virtue of the sale. The recorded lease constituted a real right joined to the thing as the soul to the body. In like manner, by reason of the purchase by the Delgado brothers of the remaining half (the lease on the properties having been recorded) he was bound to respect such lease as far as the purchased half was concerned, under the same circumstances and on the same terms affecting Joaquín Díaz.

"Likewise, if the lease had not been recorded and Díaz had agreed to respect the same when purchasing, he would be bound by the agreement as the Delgado brothers would also be if such stipulation had been made.

"Therefore, the only case where the purchaser of a leased property may consider the lease executed by the vendor as nonexistent, or rather, as terminated, is when the lease has not been recorded in the registry of property and there was no stipulation between the lessee and the purchaser binding the latter to respect the lease."

We may add that nothing of what we have set forth in this opinion militates against the jurisprudence established by the Supreme Court of Spain and by the Supreme Court of Porto Rico in respect to the idea of third person. The conclusion reached by us is limited to fixing the extent of the rights recognized in the purchaser of a leased property by section 1474 of the Civil Code.

The judgment, therefore, must be reversed, as we said at the outset. The defendant will be allowed to amend his pleading. The contents of the proposed amendments in regard to the record of the lease are still confused. If it is meant thereby that the lease was recorded as to all of the properties A, B and C, and later was canceled on half of them by virtue of the action of redemption, we are inclined to think that the said cancellation would not benefit the plaintiff. Nor is the proposed amendment to the second cause of action sufficiently clear. The stipulation of the contract referring to the payment should be alleged with entire precision and likewise in what the default in the payment consisted, for if the lessee was really bound to deposit the rent in a Yauco bank during the week and did so, there would be no cause of action.

For the foregoing reasons the judgment appealed from is reversed and the case will be remanded to the proper district court for further proceedings not inconsistent with this opinion.

Mr. Justice Hutchison dissented.